# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 21, 2013

Lyle W. Cayce
Clerk

No. 12-10174

ANTHONY NGOMI KARIUKI,

Plaintiff-Appellant,

v.

TRACY TARANGO,
Field Office Director, Dallas District Office,
United States Citizenship & Immigration Services et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and GARZA and ELROD, Circuit Judges.
CARL E. STEWART, Chief Judge:

Plaintiff-Appellant, Anthony Ngomi Kariuki ("Kariuki") appeals the district court's grant of summary judgment to Defendants-Appellees ("Appellees"). Kariuki had petitioned under 8 U.S.C. § 1421(c) for review of his denied naturalization application. However, the district court determined that he could not demonstrate good moral character as a matter of law, a prerequisite for naturalization under 8 U.S.C. § 1427(a) and 8 C.F.R. § 329.2(d). For the reasons provided below, we AFFIRM.

No. 12-10174

## I. BACKGROUND

In 1998, Kariuki entered the United States on a six-month visitor visa. He never left and, in the ensuing years, has misrepresented his immigration status repeatedly.

In 2000, Kariuki enlisted in the U.S. Army by means of a false passport stamp denoting permanent residency. He was discharged for "fraudulent enlistment."

In 2001, Kariuki pleaded guilty to violating 18 U.S.C. § 911.[1] He had violated the statute by checking the box on an INS Form I-9,[2] which attested, under penalty of perjury, that he was a "citizen or national of the United States." In connection with this same incident, Kariuki had erased the words "Not Valid for Work Without INS Verification" from his Social Security card, which he had presented to a prospective employer along with the INS Form I-9. In a sworn statement to U.S. Citizenship and Immigration Services ("USCIS"), Kariuki later testified that he was aware the falsification of these documents constituted "fraud."

Despite his visa overstay, his Army discharge for fraudulent enlistment, and his guilty plea for falsely representing himself as a citizen, Kariuki remained in the United States. In 2003, 2004, and 2008, he applied for apartment rentals, providing the names and phone numbers of purported employers. Kariuki, in fact, was unemployed and had enlisted friends to verify his false claims of employment.

Kariuki applied for naturalization in 2004 pursuant to 8 U.S.C. § 1440, which waives the residency requirement for qualifying military veterans.

---

[1] "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 911.

[2] An INS Form I-9 verifies employment eligibility.

No. 12-10174

During his naturalization interview, Kariuki claimed under oath that he never had falsely represented himself as a U.S. citizen.

USCIS denied Kariuki's application on September 29, 2009, finding that he was not "a person of good moral character," as required by 8 U.S.C. § 1427(a) and 8 C.F.R. § 329.2(d). Kariuki administratively appealed, and his administrative appeal was denied on May 25, 2010.

Kariuki filed the instant suit on August 9, 2010, petitioning for review of his denied application pursuant to 8 U.S.C. § 1421(c). In July of 2011, during a deposition for the instant proceedings, Kariuki again claimed under oath that he never had falsely represented himself as a U.S. citizen.

Appellees moved for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56, asserting that Kariuki could not demonstrate good moral character as a matter of law. Kariuki requested an evidentiary hearing as to his moral character.

The district court granted Appellees' motion for summary judgment without conducting an evidentiary hearing. In doing so, it cited, *inter alia*, to Kariuki's visa overstay, his prior conviction for a crime of dishonesty, his discharge from the Army for fraudulent enlistment, his recurring efforts to misrepresent his employment status on rental applications, and his sworn answers in the naturalization interview and court deposition, which were at odds with the central premise underlying his prior conviction. On January 17, 2012, the district court entered final judgment for Appellees.

## II. DISCUSSION

On appeal, Kariuki argues that the district court erred by using the summary judgment procedure in his 8 U.S.C. § 1421(c) naturalization proceedings because he had requested an evidentiary hearing.[3] Kariuki also

---

[3] Kariuki makes this argument in response to our July 10, 2012 letter to counsel for the parties, which requested supplemental briefing on this issue.

contends that the district court erred by considering conduct that preceded the filing of his application by more than one year, despite the one-year "good moral character" time limit for military naturalizations articulated in 8 C.F.R. § 329.2(d).  Moreover, Kariuki submits that, regardless of his prior conduct, affidavit evidence of his present conduct creates a genuine issue of material fact as to his moral character.  Finally, Kariuki maintains that the district court erred by applying collateral estoppel in his naturalization proceedings.[4]

### A.    A "Hearing De Novo" Within the Meaning of 8 U.S.C. § 1421(c) Encompasses an FRCP 56 Review on Summary Judgment.

Kariuki argues that the district court erred by using the summary judgment procedure even though he had requested an evidentiary hearing. Section 1421(c), entitled "Judicial review," states:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under [8 U.S.C. § 1447(a)], may seek review of such denial before the [appropriate] United States district court. . . . *Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.*

8 U.S.C. § 1421(c) (emphasis added).

At issue is whether the "hearing de novo" language impels an evidentiary hearing or whether an FRCP 56 review suffices.  This is an issue of first impression in this Circuit.  To date, the Second Circuit has provided the only published appellate opinion on the issue.  *See Chan v. Gantner*, 464 F.3d 289, 295-96 (2d Cir. 2006) (per curiam).  However, both the Third and the Eleventh Circuits have expressed their agreements with *Chan* in recent unpublished

---

[4] After applying collateral estoppel, the district court determined that Kariuki's testimony at deposition and in the USCIS interview, that he never had represented himself as a U.S. citizen, was necessarily "false" within the meaning of 8 U.S.C. § 1101(f)(6) because it conflicted with his prior conviction under 18 U.S.C. § 911 for falsely representing himself as a U.S. citizen.

opinions. *See Abulkhair v. Bush*, 413 F. App'x 502, 507-08 n.4 (3d Cir. 2011) (per curiam) (unpublished); *Cernuda v. Neufeld*, 307 F. App'x 427, 431 n.2 (11th Cir. 2009) (per curiam) (unpublished). Upon consideration, we agree with our sister circuits that a "hearing de novo" within the meaning of Section 1421(c) encompasses an FRCP 56 review on summary judgment.

## 1.     Standard of Review

"We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Pierce v. Dep't of the Air Force*, 512 F.3d 184, 186 (5th Cir. 2007) (citation omitted). "Questions of law are reviewed de novo." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009) (citation omitted).

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine dispute if the record, taken as a whole, could not lead a rational trier-of-fact to find for the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 597-98 (1986).

## 2.     Analysis

FRCP 81(a)(3) states that the Federal Rules of Civil Procedure, including Rule 56, "apply to proceedings for admission to citizenship to the extent that the practice in those proceedings" (i) "is not specified in federal statutes"; and (ii)

No. 12-10174

"has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(3). We structure our analysis around this test.

### a. Section 1421(c) Does Not Specify an Alterative to the Federal Rules of Civil Procedure for Naturalization Hearings.

Concerning the first prong of the FRCP 81(a)(3) test, Kariuki relies on a structural analysis to argue that, by specifying a "hearing de novo," Congress intended only for a full evidentiary hearing in naturalization proceedings. We briefly recount this argument.

The last sentence of Section 1421(c) states: (i) "Such review shall be de novo, and" (ii) "the court shall make its own findings of fact and conclusions of law and" (iii) "shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c). Kariuki notes that the first clause of Section 1421(c)'s last sentence states that "such review shall be de novo." Thus, he argues that the "hearing de novo" language in the third clause could not merely set the standard of review for a Section 1421(c) hearing, or else the first clause would be superfluous. Rather, Kariuki contends that "hearing de novo" describes the specific type of Section 1421(c) "hearing" envisioned by the statute.

Next, Kariuki notes that the second clause of Section 1421(c)'s last sentence states that "the court shall make its own findings of fact and conclusions of law." He maintains that the third clause, "conduct a hearing de novo on the application," expands the review necessary to make the second clause's findings to "testimonial evidence," as opposed to just "deposition transcripts, affidavits, and other [paper] evidence." We are not persuaded.

As Appellees argue, Section 1421(c)'s "vague reference" to a "hearing de novo" does not amount to an alternatively specified practice. In *United States v. Florida East Coast Railway Co.*, the Supreme Court explained that "[t]he term 'hearing' in its legal context undoubtedly has a host of meanings. Its meaning undoubtedly will vary, depending on . . . context." 410 U.S. 224, 239 (1973)

(footnote omitted).   In *United States v. Tannehill*, we added that, "[i]n determining what Congress meant by its use of the word 'hearing' . . . we must consider the context in which the word is used and give to the term its ordinary meaning within that context."   49 F.3d 1049, 1053 (5th Cir. 1995) (citation omitted). "[T]he term 'hearing' . . . 'does not necessarily embrace either the right to present evidence orally and to cross-examine opposing witnesses, or the right to present oral argument to the agency's decision-maker.'" *Texas v. United States*, 866 F.2d 1546, 1555 (5th Cir. 1989) (quoting *Fla. E. Coast Ry. Co.*, 410 U.S. at 240 (evaluating the term "hearing" as used in the Administrative Procedure Act)).

In *Aparicio v. Blakeway*, we specifically addressed the meaning of "hearing" within the context of Section 1421(c), and clarified that the modifier "de novo" merely specifies the standard of review.  *See* 302 F.3d 437, 440 (5th Cir. 2002).  We are not persuaded by Kariuki's structural argument, which, in effect, attacks our precedent from *Aparicio*.

Neither use of "de novo" is superfluous.  The first clause of Section 1421(c)'s last sentence, which states that "such review shall be de novo," simply explains that the deferential "arbitrary and capricious" standard often applicable to administrative reviews does not apply in this context.  The last clause, "conduct a hearing de novo on the application," then clarifies that review is not limited to the administrative record.  Rather, "the court shall make its own findings of fact and conclusions of law," as articulated in the second clause.  The district court may do so by admitting and reviewing evidence in accordance with the Federal Rules of Civil Procedure, which apply pursuant to FRCP 81(a)(3) in the absence of statutory language to the contrary.

### b.     Our Past Practices in Naturalization Hearings Have Conformed to the Federal Rules of Civil Procedure.

Concerning the second prong of the FRCP 81(a)(3) test, Appellees argue that past practices in naturalization hearings, both before and after the

No. 12-10174

Immigration Act of 1990, Pub. L. No. 101-649, § 401(a), have conformed to the Federal Rules of Civil Procedure.  In making this point, Appellees cite to persuasive Ninth Circuit precedent, as well as the decisions of various district courts within our jurisdiction, which have specifically applied the FRCP 56 summary judgment procedure to Section 1421(c) proceedings.  We agree.

In *Abela v. Gustafson*, the Ninth Circuit explained that "[n]aturalization proceedings are 'civil actions' . . . .  [W]hile there is extensive administrative participation, an application for naturalization is in every respect a judicial proceeding and encompasses every incident of such proceedings."  888 F.2d 1258, 1262 (9th Cir. 1989) (citing, *inter alia*, *Tutun v. United States*, 270 U.S. 568, 576-79 (1926)).  Surely, these incidents of judicial proceedings include the Federal Rules of Civil Procedure.

Moreover, as noted above, multiple district courts within this Circuit have specifically concluded that the Rules, including Rule 56, apply to Section 1421(c) proceedings.  *See, e.g.*, *Islam v. Harrington*, No. 3:00-cv-1683-P, 2001 WL 1335851, at *3-4 (N.D. Tex. Oct. 23, 2001); *Jiwani v. Immigration & Naturalization Serv.*, No. 3:00-cv-1077-X, 2001 WL 322421, at *1 (N.D. Tex. Mar. 30, 2001) (adopting the findings, conclusions, and recommendation of the magistrate judge (available at No. 3:00-cv-1077-X, 2001 WL 258409, at *2-3 (N.D. Tex. Mar. 13, 2001))).  Additional courts within our jurisdiction have applied FRCP 56 to Section 1421(c) proceedings without comment.  *See, e.g.*, *Rangel v. Barrows*.  No. 4:07-cv-279, 2008 WL 4441974 (E.D. Tex. Sep. 25, 2008); *Edem-Effiong v. Acosta*, Civil No. H-04-2025, 2006 WL 626406 (S.D. Tex. Mar. 13, 2006).  The district courts' routine application of FRCP 56 to Section 1421(c) proceedings is a persuasive indication that our past practices in naturalization hearings have conformed to the Federal Rules of Civil Procedure.

### c.    We Need Not Reach Kariuki's Alternative Legislative History Argument.

No. 12-10174

Finally, in light of the above analysis, we need not reach an alternative argument raised by Kariuki concerning Section 1421(c)'s legislative history. Kariuki posits that prior to passage of the Immigration Act of 1990, the authority to naturalize aliens lied exclusively in the district courts, which conducted full evidentiary hearings. *See, e.g.*, *Tutun v. United States*, 270 U.S. at 576; Immigration and Nationality Act of 1952, Pub. L. No. 82-414, ch. 477, § 336. He quotes from a floor statement by the Immigration Act of 1990's congressional sponsor for the proposition that Congress intended to preserve the full hearing function of the district courts despite providing for the administrative review of naturalization applications in the first instance. *See* 135 Cong. Rec. H4539 (Jul. 31, 1989) (statement of Rep. Bruce Morrison) (stating that the Act "does not take away any of the judicial review rights accorded applicants today. It retains the ability of the applicant to take the case to court in a manner similar to current procedures. . . . Denied cases are appealed to the District Court and heard de novo as under existing law."). Here, we need look no further than the plain language of Section 1421(c) and the Federal Rules of Civil Procedure. However, we note that, without further support or context, it is unclear whether Representative Morrison's isolated floor statement is representative of the majority who actually voted for the legislation.

For all of the above reasons, a "hearing de novo" within the meaning of Section 1421(c) encompasses an FRCP 56 review on summary judgment.

**B.    Consideration of Prior Conduct Is Appropriate Where the Conduct Is Relevant to Assessing the Applicant's Moral Character or Present Conduct Indicates Poor Moral Character.**

**1.    Standard of Review**

"Congress alone has the constitutional authority to prescribe rules for naturalization." *Fedorenko v. United States*, 449 U.S. 490, 506-07 (1981) (footnote and citations omitted). Therefore, the courts' task is to ensure "strict compliance with the statutory conditions precedent to naturalization . . . ." *Id.*

"[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect. . . . [Any] doubts should be resolved in favor of the United States . . . ." *Berenyi v. Dist. Dir., Immigration & Naturalization Serv.*, 385 U.S. 630, 637 (1967) (internal quotation marks and citation omitted). "An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. This includes the period between the examination and the administration of the oath of allegiance." 8 C.F.R. § 316.10(a)(1).

### 2.    Analysis

In *Lopez v. Henley*, we upheld as reasonable a "good moral character" requirement, applicable to military naturalization applications, which the former Immigration and Naturalization Service had promulgated. *See* 416 F.3d 455, 457-58 (5th Cir. 2005). That requirement states: "To be eligible for naturalization . . . [a military] applicant must establish that he or she . . . [h]as been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character . . . ." 8 C.F.R. § 329.2(d).

While Section 329.2(d) sets a one-year good moral character time limit, an additional regulation explains that a reviewing tribunal "is not limited to reviewing the applicant's conduct during the [one year] immediately preceding the filing of the application." 8 C.F.R. § 316.10(a)(2). Rather, the tribunal "may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period" (i) "if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period"; or (ii) "if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character." *Id.*

At issue here is whether it was improper for the district court to consider Kariuki's visa overstay, prior conviction, and discharge from the Army, in determining that he could not demonstrate good moral character as a matter of

law, because those events preceded his application filing by more than one year. This is an issue of first impression in this Circuit. We conclude that the district court's actions were proper.

In *Hovsepian v. United States*, the Ninth Circuit imposed an affirmative obligation on the applicant to demonstrate good moral character during the Section 316.10(a)(2) regulatory term. *See* 422 F.3d 883, 886 (9th Cir. 2005) (en banc) ("Appellees were required to demonstrate good moral character during the period from . . . [one year] before they filed their applications . . . through the date of the most recent hearing . . . ."). We believe this construction of Section 316.10(a)(2) is sensible.

After all, the language in Section 316.10(a)(2)'s second prong, that the tribunal may take prior conduct into consideration "if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character," is unmistakably sweeping. As documented above, Section 316.10(a)(1) and *Berenyi* squarely place the burden on the alien "to show his eligibility for citizenship in every respect." 385 U.S. at 637. Furthermore, in *Fedorenko*, the Supreme Court admonished that we strictly comply "with the statutory conditions precedent to naturalization." 449 U.S. at 506. Thus, we do not believe an alternative construction of Section 316.10(a)(2) would be permissible.

Accordingly, evidence of Kariuki's bad prior conduct was relevant to ruling on his naturalization application, and Kariuki needed to rebut it with sufficiently probative evidence of good present conduct to survive summary judgment. As discussed in the proceeding section of this opinion, Kariuki failed to do so.

**C.  Affidavit Evidence of Present Conduct, Without More, Cannot Create a Genuine Issue of Material Fact As to Moral Character Where It Conflicts with Probative Evidence of Prior Conduct.**
   **1.    Standard of Review**

"[S]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment." *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (internal quotation marks and citation omitted). Thus, without more, a vague or conclusory affidavit is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence. *See Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002) (collecting citations).

### 2.    Analysis

As discussed above, evidence of prior conduct is permissible if it is relevant to a *present* determination of the applicant's moral character. *Hovsepian*, 422 F.3d at 886. If such evidence is indicative of poor moral character, the applicant must rebut it with sufficiently probative evidence of good present conduct to withstand a motion under FRCP 56. *See id.*

Here, Kariuki maintains that he satisfied his *Hovsepian* burden by submitting affidavits from "[himself] and his friends attest[ing] to his volunteerism . . . and to his work in bringing parents and children together." He specifically quotes one such affidavit, which states that Kariuki "speaks to me and to friends of ours about his need to live his life in conformance with the law." Kariuki contends that the district court erred by failing to address these affidavits in its opinion granting Appellees summary judgment because the affidavits created a genuine issue of material fact as to his moral character. We are not persuaded.

In its opinion, the district court *did* address numerous instances of dishonest conduct by Kariuki, both prior and present. In addition to his prior conduct, the district court considered Kariuki's recurring efforts to misrepresent his employment status on rental applications and his provision of sworn answers, in his naturalization interview and at his deposition, which conflicted with the central premise of his prior conviction. These actions occurred within

the one-year regulatory time limit and suggest that Kariuki has not reformed his moral character at all.  Under *Lawrence* and *Copeland*, vague, self-serving, and conclusory affidavits from conceded friends, attesting to general "volunteerism" and "work in bringing parents and children together," are entirely insufficient to create a genuine issue of material fact as to Kariuki's moral character. Therefore, summary judgment was appropriate.

**D.    Collateral Estoppel Applies to an Applicant's Testimony in Naturalization Proceedings Where That Testimony, If Credited, Attacks an Essential Premise Underlying a Prior Criminal Conviction.**

The district court determined that, because Kariuki had pled guilty in 2001 to violating 18 U.S.C. § 911, which criminalizes false representations of U.S. citizenship, his testimony in his naturalization interview and at his deposition, that he never had claimed to be a U.S. citizen, was necessarily "false" within the meaning of 8 U.S.C. § 1101(f)(6).[5]  Thus, while the district court declined to determine whether or not Kariuki had falsely represented himself "for the purpose of obtaining any [immigration] benefits," it ruled that he was collaterally estopped from challenging the central premise of his 2001 plea, which was that he had made the false representation.

Accordingly, the district court cited to Kariuki's testimony at deposition and before the USCIS, that he had not made the false representation, as evidence of present conduct indicative of poor moral character.  As discussed in the preceding sections of this opinion, the district court then used this determination to justify its consideration of Kariuki's prior conduct pursuant to 8 C.F.R. § 316.10(a)(2).

**1.    Standard of Review**

---

[5] Section 1101(f)(6) states:  "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . one who has given false testimony for the purpose of obtaining any benefits under this chapter."  8 U.S.C. § 1101(f)(6).

No. 12-10174

The applicability of collateral estoppel is a question of law, which we therefore review de novo. *See Shaikh*, 588 F.3d at 863.

"When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982). With collateral estoppel, unlike with res judicata, "the subject matter of the later suit need not have any relationship to the subject matter of the prior suit." *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994).

Collateral estoppel is appropriate where four conditions are met: (i) "The issue under consideration in a subsequent action must be identical to the issue litigated in a prior action"; (ii) "The issue must have been fully and vigorously litigated in the prior action"; (iii) "The issue must have been necessary to support the judgment in the prior case"; and (iv) "There must be no special circumstance that would render [estoppel] inappropriate or unfair." *Id.* (citations omitted). The fourth element, special circumstances rendering estoppel unfair, applies only to the use of offensive (non-mutual) collateral estoppel by the plaintiff. *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290-91 n.12 (5th Cir. 1995).[6]

While the provision of false assertions on a written naturalization application does not, in itself, constitute false testimony within the meaning of Section 1101(f)(6), subsequent oral testimony before an immigration officer that the false assertions contained within the written application are true does constitute false testimony. *Kungys v. United States*, 485 U.S. 759, 780 (1988).

2.    **Analysis**

---

[6] Here, this fourth element does not apply because the party benefitting from the application of collateral estoppel is the defendants-appellees (the government) and, regardless, Kariuki "assum[es] that USCIS was in privity with the . . . government during [the] criminal prosecution." Appellant's Opening Br. at 14.

No. 12-10174

On appeal, Kariuki challenges the district court's application of collateral estoppel on three distinct grounds.

### a.    Ground One

First, Kariuki attempts to distinguish naturalization proceedings before the USCIS, which is an administrative tribunal, from criminal proceedings, which unfold in the district courts.    Specifically, he argues that "[a]n administrative naturalization proceeding is not an action between the parties," and, as a matter of agency policy, USCIS naturalization interviews "are non-adversarial in nature."[7]

Upon closer review, we conclude that these non-material distinctions between USCIS and district court proceedings are of no moment under our precedents.    Previously, we have ruled that, in subsequent civil proceedings, a prior conviction is sufficient to establish all facts necessary to prove the elements of the crime of conviction.    *In re Grothues*, 226 F.3d 334, 339 (5th Cir. 2000) (citing *Johnson v. Sawyer*, 47 F.3d 716, 722 n.13 (5th Cir. 1995) (en banc)); *see also United States v. Akamo*, No. 11-20387, 2012 U.S. App. LEXIS 9786, at *3-4 (5th Cir. May 15, 2012) (per curiam) (unpublished) (applying estoppel pursuant to *Grothues*, in district court denaturalization proceedings, where the applicant had collaterally attacked a prior guilty plea).    With no authority to the contrary, we see no reason in logic or fairness that *Grothues* should not apply with equal force to administrative proceedings as it does to district court proceedings involving similar naturalization questions.    Moreover, even if collateral estoppel did not apply to Kariuki's testimony in his USCIS naturalization interview, it certainly applied to his deposition testimony in the district court proceedings.

---

[7] According to the "Interview Policies" set forth in Section 15.1 of the USCIS Adjudicator's Field Manual:    "Interviews conducted by adjudication officers are non-adversarial in nature (as opposed to, say, a court proceeding involving two attorneys, each representing a particular side before a judge)."

15

No. 12-10174

For these reasons, Kariuki's first challenge to the district court's application of collateral estoppel is unavailing.

### b.      Ground Two

Second, Kariuki asserts that the box he checked on the INS Form I-9 attested that he was "a citizen or national of the United States."   Kariuki maintains that he entered into the plea agreement only after his then-attorney advised him he had violated 18 U.S.C. § 911, which criminalizes false and willful representations of U.S. *citizenship*, "despite his subjectively believing that he did not" and, instead, only had made false representations of U.S. *nationality*. Kariuki provided an affidavit to the district court, attesting to this subjective belief, that he only had made a false and willful representation of U.S. nationality.

This argument cannot stand.  As discussed in the preceding sections, "self-serving allegations" generally are not "significant" or "probative evidence," *Lawrence*, 276 F.3d at 197 (internal quotation marks omitted), nor is testimony "based on conjecture or speculation," *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994).  Without further explanation, an affidavit that conflicts with the affiant's prior sworn testimony, including a prior guilty plea, is insufficient to avoid the application of collateral estoppel.  *See Copeland*, 278 F.3d at 482 (citations omitted).

Here, Kariuki failed to provide the further explanatory evidence required by *Copeland*, such as an affidavit from his then-attorney attesting to Kariuki's recollection of the circumstances surrounding his guilty plea.  On Kariuki's bare affidavit, we are especially chary to dispense with the seemingly clear applicability of the collateral estoppel doctrine.  S*ee, e.g.*, *Akamo*, 2012 U.S. App. LEXIS 9786, at *3-4 (applying estoppel "regardless of [the applicant's] intent" with respect to his prior guilty plea).

### c.      Ground Three

16

No. 12-10174

Third and finally, Kariuki submits that collateral estoppel is an affirmative defense, which Appellees waived by failing to plead in their answer. In support of this proposition, Kariuki cites to FRCP 8(c) and to our precedent from *Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168 (5th Cir. 1985).

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . estoppel . . . [and] res judicata." Fed. R. Civ. P. 8(c). "Collateral estoppel . . . is generally considered to be a variant of the doctrine of res judicata. Under [FRCP 8(c)], res judicata, and hence collateral estoppel, is an affirmative defense which if not pled is considered waived." *Mozingo*, 752 F.2d at 172 (footnotes omitted).

Notwithstanding the above, Kariuki fails to acknowledge that we have recognized a good faith exception to waiver where raising the affirmative defense after the pleadings does not cause undue prejudice:

> Generally, under Rule 8(c) affirmative defenses must be raised in the first responsive pleading. However, "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal." An affirmative defense is not waived if the defendant "raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond."

*Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (alterations in original) (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983) (per curiam) (citation omitted)).

Here, Kariuki is collaterally attacking his prior criminal conviction. From his complaint, which merely petitioned for review of his denied naturalization application under 8 U.S.C. § 1421(c), Appellees had no reason to anticipate, in drafting their answer, that Kariuki would collaterally attack the prior conviction to which he voluntarily had pled guilty.

Furthermore, in these appellate proceedings, Kariuki has had ample opportunity to brief the collateral estoppel issue, which is a question of law that

17

we review de novo.  Accordingly, these are precisely the circumstances to which the *Knoblauch* good faith exception applies.  In light of the above, Appellees did not waive the collateral estoppel affirmative defense.

Thus, the district court did not err by applying collateral estoppel to preclude Kariuki's relitigation of the central premise underlying his prior conviction, that he had falsely represented himself as a U.S. citizen.  Moreover, the district court did not err by determining that Kariuki's testimony, in his naturalization interview and at his deposition, was false and indicative of poor moral character.  Finally, the district court did not err by considering Kariuki's prior conduct, and then concluding that he could not establish good moral character as a matter of law.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.