# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 5, 2015

Lyle W. Cayce
Clerk

No. 13-31244

FITE OIL & GAS, INC.,

Plaintiff-Appellant

v.

SWEPI, L.P.,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:11-CV-1621

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Fite Oil & Gas, Inc. appeals from the district court's declaratory judgment that, as a lessee who refused to participate in the drilling of a well, it must pay its own lessors the royalties they are due. Fite's claims have become moot during the pendency of this action. We VACATE the district court's order and REMAND with instructions that the complaint be dismissed.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31244

FACTS AND PROCEDURAL BACKGROUND

Fite and SWEPI, L.P. held oil, gas, and mineral leases on some of the same property in northwest Louisiana. According to the original complaint, Fite acquired interests in 2007 under two leases executed in the early 1960's, covering acreage in four sections of land in DeSoto Parish, Louisiana. Fite claimed that SWEPI acquired leases "in direct conflict with Fite's interest." SWEPI argued that some of its interests were in "top leases," *i.e.*, subsequent leases that would become effective only upon the expiration of the prior leases. In August 2009, Fite demanded that SWEPI release its competing leases. In September, SWEPI wrote Fite that it would not release its acreage.

In October 2009, SWEPI wrote Fite about its intent to drill a well in a unit approved by the Louisiana Commissioner of Conservation. The unit would cover some of Fite's leasehold. By statute, owners of separately-owned tracts within a drilling unit approved by the Commissioner may agree to pool their interests and jointly develop the property. LA. REV. STAT. § 30:10(A). The SWEPI letter referred to a subsection of that same statute which provides that those who drill the well are "entitled to own and recover out of production" the drilling, completion, and operating costs allocable to the non-participating owner and also to retain a "risk charge." § 30:10(A)(2)(b)(i). Only after these amounts have been recovered out of production will the non-participating owners begin to receive their percentage of production revenue. *See id.*

The two companies engaged in discussions about Fite's lease interests and the well. According to Fite's original complaint, SWEPI offered $2,000 per acre to buy Fite's interests. Fite claimed SWEPI invalidly withdrew the offer in September 2010. In December, SWEPI again wrote Fite, setting out the costs of the well, referring to the statutory penalty that non-participating working interest owners must bear, and offering Fite a chance to participate

2

No. 13-31244

by agreeing to share in the costs of the well.  The well apparently had already been completed.  According to Fite's complaint, negotiations between the companies failed.

The drilling of the well began in October 2009, and it was completed in March 2010.  Production ceased in December 2011.  Revenue from the well was less than the cost of drilling and completion.  Throughout the period of production, SWEPI paid nothing to Fite because it had not agreed to share in the costs of the well.  Those costs were still being recouped when production ceased.  SWEPI also did not make royalty payments out of this revenue to Fite's lessors or to Fite for their benefit.  Until it recouped its costs and the risk charge under Section 30:10(A)(2)(b)(i), SWEPI asserted that it had no obligation to pay anything to the lessors of a non-participating working interest owner.  It maintained that Fite, as lessee, was required to pay its lessors out of its own funds.

In September 2011, Fite filed suit in the United States District Court for the Western District of Louisiana.  Production from the well was still occurring but was nearing its end.  In the complaint, Fite claimed that SWEPI had agreed to purchase Fite's interests for $693,280.  The suit sought that sum, other damages, and a declaration that SWEPI had to pay the royalties due to Fite's lessors.  SWEPI denied that it had agreed to purchase Fite's interests.  It claimed that a formal written agreement was contemplated but never executed.  It also denied any obligation to pay the royalties owed under Fite's leases.

Fite amended its complaint in January 2013.  It dropped its claim that SWEPI had agreed to purchase its interests.  It now sought only a declaratory judgment stating that Fite had not incurred the risk penalty, and that SWEPI was obligated to pay Fite's lessors the royalties they were due from production.

No. 13-31244

The risk charge would become a moot point, though, because production on the well ceased before the costs of drilling and completing the well were recovered. Thus, SWEPI could not recover a risk charge out of production revenues.

Both parties moved for summary judgment, contending that Section 30:10(A)(2) required the other to make the royalty payments. In November 2013, the district court ruled in favor of SWEPI. Fite timely appealed.

In November 2014, after briefing and argument, we requested that the parties submit letter briefs addressing whether Fite's lessors' royalty claims have prescribed, and if so, whether that rendered Fite's claim that it is not responsible for paying the royalties moot. SWEPI contends that the lessors' claims have prescribed. Fite, in contrast, argues that its lessors have claims against SWEPI that do not relate to royalties and are subject to a longer prescription period that has not yet expired. It also claims that its suit against SWEPI was brought on behalf of its mineral lessors, making the lessors' failure to bring suit is irrelevant.

## DISCUSSION

The district court entered a judgment declaring that Fite and not SWEPI had the obligation to pay the royalties due to Fite's lessors. The royalty owners themselves have never been parties to this suit. The parties have represented to us that the royalty owners have not brought any suit against either company to insist on payment. Even so, no question was raised by anyone in the district court about whether the royalty owners should be parties to a suit that seeks to determine which company owes them money.

A somewhat analogous and recurring form of litigation is a declaratory judgment action among multiple insurance companies, with the issue being which one is to provide indemnity to a common insured. Some caselaw

No. 13-31244

suggests there is no actual controversy to support a declaratory action until there is a judgment against the insured. 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2760 (3d ed. 1998). "After there has been judgment against the insured, [though,] it is clear that a declaratory action is appropriate to determine which insurer must pay . . . ." *Id.* Often, the indemnity has been paid, and the insured has no further claim against any of the insurance companies. *See, e.g., Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.,* 683 F.3d 79, 84 (5th Cir. 2012) (suit among multiple insurance companies who had indemnified insured and reserved their claims as to which company had actual liability). Having the claim against the insured satisfied before a court determines the responsible insurer makes the dispute concrete.

Unlike situations such as that in *Continental Casualty*, Fite and SWEPI are not seeking a declaration as to which of them must pay a judgment already entered in favor of someone else, or which must pay someone whose claims are being resolved in the same litigation. Fite, as plaintiff, sought a declaration that defendant SWEPI had to pay royalties to Fite's lessors. The judgment resolved the issue without ordering either to pay the non-party royalty owners.

One question is whether Fite had standing to seek this declaration. "To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores,* 557 U.S. 433, 445 (2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The "critical question" is whether either party has "alleged such a personal stake in the outcome of the controversy as to warrant [the] invocation of federal-court jurisdiction." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

5

No. 13-31244

Fite definitely had a personal stake in the resolution of its claims for almost $700,000 in contract damages and to be exempt from the risk penalty. Final judgment resolved neither, though, for reasons we earlier explained. On the need for standing to receive a declaration that it did not have to pay royalties, Fite's most difficult task lies in showing that any injury it incurred is redressable by a favorable ruling in a suit solely between these two oil companies. Of course, a validly-entered judgment would bind the two parties as between themselves. *See* FED. R. CIV. P. 19, cmt. General Considerations to 1966 Amendments (failure to add a necessary party "does not by that token deprive [the court] of the power to adjudicate as between the parties already before it"; absence of a necessary party does not "negate the court's power to adjudicate as between the parties who have been joined."). Even so, whether the district court's judgment redressed any injury is questionable.

We pretermit the concerns about redressability and other elements of standing and instead turn to mootness, a different jurisdictional issue that a court must note on its own when it is not raised. *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). "We must address the issue of mootness first, because to qualify as a case for federal court adjudication, a case or controversy must exist." *Bayou Liberty Ass'n v. United States Army Corps of Eng'rs,* 217 F.3d 393, 396 (5th Cir. 2000). Article III's "case or controversy" requirement bars federal courts from exercising jurisdiction over moot claims. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). A claim is moot if a decision "cannot affect the rights of litigants in the case before them." *Id.* "If a claim becomes moot after the entry of a district court's judgment and prior to the completion of appellate review, we generally vacate the judgment and remand for dismissal." *Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470,

6

471 (5th Cir. 2003) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)).

The mootness question in this appeal is whether the royalty owners' right to insist on payment still exists.  The answer turns on whether Fite's lawsuit prevented its lessors' claims from prescribing, and if not, whether the lessors' claims have prescribed.  Because the royalty owners are not parties, our answers to these questions are binding only on Fite and SWEPI.

I.    *Fite's Claims On Behalf of Its Lessors*

Fite argues that "the only claims at issue in this matter are the claims arising under Section 30:10 for payment of the Mineral Owners' portion of production asserted directly against SWEPI by Fite on behalf of the Mineral Owners."  In other words, Fite argues that it sued not on its own behalf, but on behalf of its lessors.  As a result, Fite's lessors effectively filed their claims before the expiration of any applicable prescription period.

This argument is a difficult one to accept in light of what Fite's complaint said and what claims it had a legal right to bring.  Fite sought almost $700,000 for breach of contract and the avoidance of liability for a risk penalty, but those claims dropped out of the case.  What was left was Fite's claim that SWEPI must pay royalties to Fite's lessors.  In its amended complaint, Fite sought these two declarations from the district court:

2. Declaring that Fite has no obligation to pay royalty out of production from the Well . . . ;

3. Declaring that SWEPI is obligated to pay Fite's royalty and overriding royalty owners that portion of production from the Well due to them under the terms of the contract creating the royalty . . . .

No. 13-31244

Fite was not seeking monetary relief for its lessors. It was seeking a declaration that SWEPI was obligated to pay its lessors and that Fite was not required to do so. As a result, the district court ruled that "SWEPI is not liable to Fite" under Louisiana law, leaving Fite with the obligation to pay. But the court did not order Fite to pay its lessors.

Had Fite actually sought payment for its lessors, SWEPI may have questioned its capacity to do so under Federal Rule of Civil Procedure 17.[1] That Rule requires courts to determine, based on state law, whether a party not suing on its own behalf may nevertheless sue "in the name of the real party in interest." FED R. CIV. P. 17(a); *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 242-43 (5th Cir. 1993). In this case, SWEPI may have contended that Louisiana law does not permit Fite to enforce its lessors' right to royalty payments.[2] Similarly, SWEPI may have sought dismissal based on Fite's failure to join an indispensable party. *See* FED R. CIV. P. 17(a)(3), 19(b). SWEPI had no reason to raise these issues because Fite's complaint did not attempt to bring claims on behalf of the royalty owners.

We conclude that this lawsuit was strictly a contest between Fite and SWEPI, which in no way brought the claims of Fite's lessors, to whom the royalties are said to be owed, before the district court. Consequently, the period of prescription on the royalty owners' claims was not tolled.

---

[1] In one case under Section 30:10(A)(3), the lessee was appointed an agent for its lessors to bring claims against the operator. *Lamson Petrol. Co. v. Hallwood Petrol., Inc.* 763 So.2d 40, 49 (La. App. 3d Cir. 2000). There is no suggestion that Fite's lessors made such an appointment.

[2] This issue is related to, but distinct from, those relating to standing. Standing addresses whether a party has an enforceable interest of its own, whereas capacity concerns a party's right to sue on behalf of another; the latter may be waived, while the former may not. *See Thomas*, 994 F.2d at 242-43; *Hous. Auth. of Kaw Tribe of Indians v. City of Ponca City*, 952 F.2d 1183, 1192-93 (10th Cir. 1991); 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1559 (3d ed. 1998).

*II.     Prescription of Lessors' Claims*

We next examine whether the parties have conceded facts that, at least for this lawsuit, require us to hold that the lessors' claims have prescribed. In Louisiana, personal actions are generally subject to a ten-year prescription period. *See* LA. CIV. CODE art. 3499. Actions to recover royalty payments from the production of minerals, however, prescribe in three years. *See* art. 3494(5). In both cases, "[p]rescription commences to run from the day payment is exigible." art. 3495. Stated another way, prescription begins "as soon as the action accrues." *Id.* comment (b). Here, Fite's mineral lessors' royalty claims accrued as they became due; the last such claim accrued upon cessation of the well's production in December 2011. art. 3495; *see Ledoux v. City of Baton Rouge/Parish of East Baton Rouge*, 755 So.2d 877, 879-80 (La. 2000). To decide which period applies, we must determine whether the lessors' claims relate to royalty payments.

Under the lease agreement between Fite and its lessors, Fite is entitled to develop the lessors' mineral interests and the lessors are entitled to receive royalty payments. On appeal, Fite argues that "[t]he Mineral Owners' claims against Fite for royalty . . . are subject to a three-year liberative prescription period" and thus "are moot." Fite maintains that, unlike its lessors' potential claims against Fite itself, their claims against SWEPI have not prescribed because they relate to "portion of production" payments, not royalties.

Fite cites two Louisiana cases for the proposition that "portion of production" claims are quasi-contractual and entail a ten-year prescription period. *See Wells v. Zadeck*, 89 So.3d 1145, 1149 (La. 2012); *King v. Strohe*, 673 So.2d 1329, 1338 (La. App. 3d Cir. 1996). In each case, an oil and gas company began production within a drilling unit after leasing mineral rights from some owners but not others. *See Wells*, 89 So.3d at 1147; *King*, 673 So.2d

at 1332. The courts applied Section 30:10(A)(3), which allows an owner of unleased mineral interests contained within a unit to seek a *pro rata* share of any proceeds from the sale of production relating to the unit. *See* LA. REV. STAT. § 30:10A(3); *Wells*, 89 So.3d at 1149; *King*, 673 So.2d at 1338. Both courts held that such claims are subject to a ten-year prescription period. *See Wells*, 89 So.3d at 1149; *King*, 673 So.2d at 1338.

The question of the applicability of Section 30:10(A)(3) turns on whether a leased interest that is not a participating interest in a well should be considered an "unleased" interest for purposes of that statute. Fite cites no caselaw in which that characterization was made. As we just summarized, in the two cases it does cite, the relevant mineral owners had not executed mineral leases. In one of the two cited opinions, the Third Circuit Court of Appeal of Louisiana explained the operation of Section 30:10(A)(3) by referring to "unleased interests" as those still under the control of a mineral owner:

> [The statute] protects the unleased interests and avoids undue delays in the sale of production. Leased interests are usually entitled to only an in kind share of production, which they then market. It is then the lessee's duty to distribute the proceeds under its contract with its lessor. When there is no lessee, the mineral interest owner must deal directly with the unit operator, with whom he has no contractual relationship. In order to facilitate the sale of the minerals, La.R.S. § 30:10(A)(3) provides a quasi-contractual relationship between the unit operator and the mineral interest owner.

*King*, 673 So.2d at 1338.

We did discover another Third Circuit Court of Appeal decision in which the court briefly but inconclusively analyzed the applicability of Section 30:10(A)(3) to the mineral rights in a small strip of land that the operator claimed was covered by one of its leases. *See Lamson Petroleum*, 763 So.2d at 41. The court resolved a title question and determined that that strip was not

No. 13-31244

covered by any of the operator's leases but was instead subject to a competing lease given to the plaintiff. *Id.* at 43-49. The plaintiff was awarded the proceeds of production allocable to that small interest. *Id.* at 49. The court never determined whether Section 30:10(A)(3) applied to this leased but non-participating interest, though it did not categorically dismiss the possibility. The court only held that the statute was not the exclusive remedy for those seeking past revenues from production. *Id.* at 50. We do not consider *Lamson* to be contrary authority.

The statute on which Fite relies for the assertion that there is a ten-year prescriptive period is inapplicable. That statute concerns the marketing of shares of production allocable to interests "for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production . . . ." LA. REV. STAT. § 30:10(3). Fite's interests do not fall under that category. Certain mineral owners leased their interests to Fite in exchange for royalty payments, and Fite held those leases when SWEPI decided to drill a well. The fact that Fite did not agree to participate in the drilling did not convert its lessors' interests into unleased interests. Those nonparticipating but leased interests were forcibly pooled within the unit, and the operator had the right to market the production allocable to Fite's leases as well as the production allocable to interests that did participate.[3] Fite has never challenged SWEPI's authority to sell its share of production. It has only challenged whether some of that revenue was owed to Fite's lessors.

---

[3] One writer stated that the Louisiana statutes and caselaw do not clearly explain the rights of the operator under the forced pooling statute, but "other owners in the unit generally are considered to have no control over the operator's conduct of operations," which presumably includes the sale of production. Guy E. Wall, *Joint Oil and Gas Operations in Louisiana*, 53 LA. L. REV. 79, 88 (1992).

No. 13-31244

In summary, the mineral owners under Fite's leases were not entitled to seek a "portion of production" but instead were required to seek unpaid royalties from whomever might have owed it, whether Fite or SWEPI.  They were required to seek their royalty payments within three years of the date that those payments came due.  Both Fite and SWEPI agree that none of the lessors have filed suit, and the three-year prescription period has now run; the lessors also did not file a required written notice prior to suit.  *See* LA. REV. STAT. 31:137; *see also* § 30:10(A)(2)(b)(ii)(ee).

These concessions do not bind absent parties.  If Fite's royalty owners have, in fact, taken the relevant steps necessary to preserve their claims under Louisiana law, those claims are not decided by this opinion.  What is important today is that the parties in this lawsuit have conceded facts that make any determination of which company is to pay the lessors' royalties a moot point in this litigation.   The determination made by the district court is one for which there is no longer an actual case or controversy.

We VACATE the order of the district court and REMAND with instructions that the complaint be dismissed.