# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30165
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2017

Lyle W. Cayce
Clerk

ANTHONY GRIFFIN, on behalf of Morel Griffin; DOROTHY JOACHAIN, on behalf of Morel Griffin,

      Plaintiffs - Appellants

v.

HESS CORPORATION, also known as Amerada Petroleum Corporation; EXXON MOBIL CORPORATION, trading as Humble Oil, trading as Esso Standard Oil,

      Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:14-CV-2998

Before STEWART, Chief Judge, and DENNIS and HAYNES, Circuit Judges.

PER CURIAM:*

    Plaintiffs-Appellants Anthony Griffin ("Griffin") and Dorothy Joachain ("Joachain") (collectively, "Appellants") appeal the district court's grant of summary judgment in favor of Defendants-Appellees Hess Corporation

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30165

("Hess") and Exxon Mobil Corporation ("ExxonMobil") (collectively, "Appellees") related to Appellees alleged failure to pay royalties to their deceased father pursuant to an Oil, Gas, and Mineral Lease their great-grandfather Jack Griffin entered into with Amerada Petroleum Corporation ("Lease").[1]  We AFFIRM.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Appellants, both heirs to the estate of their father, Morel Griffin, who passed away in 1976, sought purportedly unpaid royalties from lessors of an Avoyelles Parish property partially owned by their great-grandfather Jack Griffin ("Property"). The undisputed facts establish that Appellants' mother informed them in 1983 or 1984 that their father was allegedly owed royalty payments from oil produced on the Property. After Appellants' mother informed them of unpaid royalties, and between the years of 1983 and 1984, Griffin visited the Clerk of Court's office in Avoyelles Parish and the Department of Natural Resources in Baton Rouge, Louisiana to research the oil wells located on the Property. Sometime around 1986, Griffin hired an attorney to assist him in investigating the claims.  Griffin noted that both his Uncle Denell and Forsythe, on behalf of her mother, confirmed to him sometime between 1983 and 1985 that they received royalty payments. Appellants continued their investigation over two decades, and in 2008 Appellants reached out to ExxonMobil directly to discuss their unpaid royalty claims.

The 2008 correspondence began with a fax from Griffin and his wife to Jane James at ExxonMobil, requesting further information as to the royalty payments allegedly owed to their father.  Griffin and his wife later spoke with

---

[1] Pursuant to 28 U.S.C. § 636(c), the district court transferred the matter to the magistrate judge who rendered the decision on the motion for summary judgment.

No. 17-30165

James by telephone concerning their unpaid royalty concerns. James, following up the telephone conversation by written letter, explained that ExxonMobil, similar to Hess, did not have: (1) any sales under the Lease after 1954; (2) any records demonstrating ExxonMobil currently maintained an interest in the Property; and (3) any outstanding royalty payments for their father in royalty owner records. Joachain confirmed that she was consulted before and after these communications with ExxonMobil.

Appellants filed this lawsuit on October 10, 2014, alleging that both ExxonMobil and Hess, pursuant to the Lease, produced oil on the Property without rendering royalty payments to their father. ExxonMobil and Hess filed a motion for summary judgment on prescription, contending that Appellants' claims were prescribed pursuant to the three-year prescription period for royalties provided in Louisiana Civil Code article 3494(5). Appellants argued that they were not required to bring the suit upon initially learning of royalties from their mother in 1983 or 1984, and any delay in doing so was justifiable because many members in the family lacked sufficient education to provide the full information required to bring suit.

Applying the three-year prescription period under Louisiana Civil Code article 3494(5), the district court granted summary judgment in favor of Appellees, finding that Appellants, at the latest, knew enough to file the lawsuit against Appellees in 2008. Appellants timely filed this appeal.

## II. DISCUSSION

This court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *See Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013). The facts must be viewed "in the light most favorable to the nonmoving party" and "all reasonable inferences" must be drawn in favor of that party. *Id.* (internal citation and quotation marks omitted). Notwithstanding this court's resolution of factual controversies in

3

No. 17-30165

favor of the non-moving party, an "actual controversy" established through "submitted evidence of contradictory facts" must exist. *See* S.*W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## A.

Appellants argue that summary judgment is not appropriate because there is a factual dispute concerning their constructive knowledge of the claims in this suit. Although proceeding *pro se* on appeal, Appellants were represented by counsel during the district court proceedings. After Appellees filed their motion for summary judgment, Appellants, rather than filing "a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried," filed a Statement of Uncontested Facts. *See* W.D. La. Loc. Civ. R. 56.2. Because of this error, the district court, as guided by the Local Rules for the Western District of Louisiana, "deemed admitted" "[a]ll material facts set forth in the statement…served by [Appellees]." *Id.*

Appellants make much of their counsel's failure to submit the required statement of disputed material facts. To be sure, such a failure is a meaningful lapse by their lawyers, but, as Appellees note, the undisputed facts that touch upon Appellants' constructive knowledge or lack thereof stem directly from the deposition testimony of Appellants. "It is…well-established that a non-movant cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement...without explaining the contradiction or attempting to resolve the disparity." *In re Deepwater Horizon*, 857 F.3d 246, 250 (5th Cir. 2017) (internal quotation marks and citation omitted).

Appellants' explanation—that the deposition testimony was only meant to speak of what they knew in the present tense and not to their knowledge

4

prior to the actual filing of the complaint—does not remedy or sufficiently explain the contradiction in light of the repeated questions about the particular date certain events took place concerning their royalty claims accruing from the Property. The deposition questions, as Appellees counsel repeatedly indicated and Appellants affirmed, related to the Property and royalties accruing from the production of oil on the Property. The material facts in this case are not in dispute.

## B.

A personal action is subject to a liberative prescription of ten years unless otherwise provided by law. *See* LA. CIV. CODE. art. 3499. Actions to recover royalty payments from the production of minerals, however, prescribe in three years. *See* LA. CIV. CODE. art. 3494(5). The district court properly held that Louisiana Civil Code article 3494(5) governs this action.[2] Courts are instructed to favor a construction that maintains a suit instead of one that prescribes it, so long as there are "two possible constructions." *Carter v. Haygood*, 2004-0646, p. 10 (La. 1/19/05); 892 So. 2d 1261, 1268. With respect to royalty payments from the production of minerals, "[p]rescription commences to run from the day payment is exigible." *Fite Oil & Gas, Inc. v. SWEPI, L.P.*, 600 F. App'x 239, 244 (5th Cir. 2015) (internal citation and quotation marks omitted). "Stated another way, prescription begins 'as soon as the action accrues.'" *Id.* (internal citation and quotation marks omitted).

The district court concluded that because, by at least 2008, Appellants had received the assistance of an attorney and had collected information sufficient to excite attention and prompt further inquiry as to the unpaid

---

[2] For the first time on appeal, Appellants argue that, instead of Louisiana's Civil Code, provisions from Louisiana's Mineral Code concerning prescription of nonuse govern this case. We will not entertain arguments raised for the first time on appeal. *See, e.g.*, *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.") (citation omitted).

No. 17-30165

royalties allegedly owed to their father, their claims for unpaid royalties were prescribed.

To defeat prescription of the underlying royalty claims, Appellants reach for the extraordinary remedy flowing from the doctrine of *contra non valentem*. Louisiana courts have recognized that the prescription period should not run where, as most relevant here, "the defendant prevents the plaintiff from availing himself of his cause of action or [where] the action was not known or reasonably knowable by the plaintiff."[3]   *Edmundson v. Amoco Prod. Co.*, 924 F.2d 79, 81 (5th Cir. 1991).   This outgrowth of the doctrine is known as the "discovery rule."

Appellants argue that "it was impossible to bring this law suit prior to…filing the [2014] complaint in federal court" because, in light of the "uncertainty of circumstances surrounding their father's claim," "they had no basis to file any claim on behalf of their father."   Any action taken prior to the filing of the October 10, 2014 complaint, Appellants contend, should not be construed or attributed to any knowledge of a specific claim against these parties. In support of that point, Appellants urge the court to consider the education and literacy of the individuals involved.

"[T]he contra non valentem 'discovery rule' is only to be applied in extreme circumstances…" *Marin v. Exxon Mobil Corp.*, 2009-2368, p. 12 (La. 10/19/10); 48 So. 3d 234, 245. "When a plaintiff acts reasonably to discover the cause of a problem, 'the prescriptive period [does] not begin to run until [he

---

[3] Louisiana's Supreme Court has recognized three other instances "where the doctrine may apply to suspend the running of prescription…: (1) where there was some legal cause that prevented the courts from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings that prevented the creditor (plaintiff) from suing or acting; [and] (3) the debtor (defendant) himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 884 n.37 (5th Cir. 2002) (citations omitted).

has] a reasonable basis to pursue a claim against a specific defendant.'" *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 894 (5th Cir. 2010) (quoting *Jordan v. Emp. Transfer Corp.*, 509 So. 2d 420, 424 (La. 1987)). However, "[c]ontra non valentem does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002) (citation omitted). As the Supreme Court of Louisiana clarified, courts should look to "the reasonableness of a plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct." *Marin*, 48 So. 3d at 246 (citations omitted).

Deposition testimony in this matter demonstrates that Appellants simply wanted, and did not require, additional information before filing the underlying lawsuit. Appellants were adults between 1983 and 1984 when their mother initially provided information about unpaid royalties. They then undertook an extensive investigation into their ownership rights and the owners of the oil wells. Public records and check stubs in Appellants' possession revealed Hess's past ownership interest in the property. Appellants waited until 2008 to reach ExxonMobil, and when they did finally receive response from ExxonMobil that it owed no royalties related to the Property, they waited six years to file the lawsuit subject to this appeal. Furthermore, because Appellants "have provided no evidence that [Appellees] …deliberately [sought] to preclude them from filing suit," they can find no relief on that basis. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422 (5th Cir. 2016).

Stated plainly, Appellants had a reasonable basis to pursue a claim against these specific defendants more than three years prior to the institution of the underlying lawsuit. Appellants contend that their respective educations as well as family members' educations is sufficient to overlook their failure to bring this lawsuit before the prescription period. Griffin stated that he

graduated high school, took up welding at a trade school, and took a paralegal class at Louisiana State University Eunice. Joachain stated that she graduated high school. Although Appellants may be correct that their level of education may, by itself, support application of the doctrine, the court cannot disregard the substance of their actions which do not indicate an inability to bring this claim. *See Edmundson*, 924 F.2d at 83–84. Additionally, Appellants received advice and meaningful information from three different lawyers on various occasions throughout their investigation of the royalty claims. These conversations ultimately culminated in them contacting ExxonMobil directly in 2008. That they now summarily deem this advice unreliable does not warrant the suspension of the prescription period. *See, e.g.*, *Daigle v. McCarthy*, 238 F. App'x 1, *4 (5th Cir. 2007) ("The appropriate focus is not when a plaintiff develops a strong legal case but when he has a sufficiently reasonable knowledge of his legal options.").

Moreover, courts have rejected applying the doctrine when faced with more egregious circumstances. *See, e.g.*, *Daigle v. McCarthy*, 444 F. Supp. 2d 705, 712–13 (W.D. La. 2006), *aff'd*, 238 F. App'x 1 (5th Cir. 2007) (per curiam) (concluding that doctrine of *contra non valentem* was not applicable to failure to bring suit concerning sexual abuse allegations for 15 years despite allegations of fraudulent concealment and post-traumatic stress disorder where, among other things, plaintiff contacted a lawyer with details underlying claim). To permit the application of the doctrine on these facts would not give effect to the circumstances typically justifying its invocation. The district court did not err in granting summary judgment. *See Edmundson*, 924 F.2d at 83–84.

## III.   CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.