# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2021

Lyle W. Cayce
Clerk

No. 20-50250

Caroline Ross,

*Plaintiff—Appellant*,

*versus*

Judson Independent School District,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-269

Before Elrod, Willett, and Engelhardt, *Circuit Judges*.
Don R. Willett, *Circuit Judge*:

Caroline Ross was employed by Judson Independent School District as principal of Metzger Middle School. JISD learned that Ross had violated several district policies, and, after an investigation and hearing, the Board of Trustees voted not to renew Ross's term contract. Ross sued JISD, bringing race, sex, and age discrimination claims under the Texas Commission on Human Rights Act as well as retaliation and due process claims under 42 U.S.C. § 1983. The district court granted summary judgment in JISD's

No. 20-50250

favor on all claims. Ross now appeals the grant of summary judgment for her state discrimination and federal due process claims.[1] We affirm.

I

Caroline Ross, an African American woman born in 1961, served as principal of Metzger Middle School, part of the Judson Independent School District, from 2010 to 2016. Ross had a term employment contract for the 2015–2016 school year; the contract required Ross to perform her assigned duties "with reasonable care, skill, and diligence" and to comply with all JISD policies and state and federal laws. Among other things, those duties included the proper collection, disbursement, and control of campus activity funds as well as the proper expenditure of those funds. Ross's contract also specifically reserved JISD's right not to renew the contract.

When JISD conducted an annual review of Metzger's expenditures from the 2014–2015 school year, the review raised concerns about several checks that were not countersigned by two individuals, as required by JISD policy, and several transactions that did not have all of the required documentation. Because these transactions were part of Ross's duties, JISD placed Ross on paid administrative leave while it conducted further investigation into possible mishandling of funds at Metzger.

That investigation revealed that Ross had violated JISD's financial management policies and the terms of her employment contract: (1) Ross permitted and authorized her secretary to sign Ross's name to campus activity fund checks; (2) Ross charged, or permitted faculty to charge, students to attend pep rallies, choir concerts, theater productions, and to get

---

[1] Because Ross failed to brief her retaliation claim, she has waived any arguments as to that claim. *See* Fed. R. App. P. 28(a)(8); *United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010).

temporary student IDs; (3) Ross charged, or permitted faculty to charge, students to purchase composition books that had been paid for by JISD funds; (4) Ross charged faculty to wear jeans; and (5) Ross deposited the proceeds from student events and faculty jeans days in a petty cash fund, which she used to pay for non-JISD authorized expenses.

The investigation also uncovered further violations of JISD policy: (1) the vice principal observed a bottle of alcohol in Ross's car while her car was parked on school property; (2) an assistant principal said that Ross had appeared to be drunk during a school ceremony for parents and students; (3) Ross had shared her passwords with her secretary and other JISD employees and had them perform her duties on JISD software; (4) Ross had her secretary run personal errands for her during work hours; (5) Ross, who was a partner in a film production company, worked on a film during school hours; and (6) Ross permitted and promoted a non-curricular student Bible study group, which did not comply with the requirements of federal law or JISD policy.

On May 19, 2016, the JISD Board of Trustees proposed not to renew Ross's contract at the end of the 2015–2016 school year. JISD sent Ross a Notice of Proposed Nonrenewal, which included a list of reasons for nonrenewal, notified Ross of her right to request a hearing, and provided Ross with the policies that governed the hearing process and some of the evidence supporting her nonrenewal. Ross requested an open, public hearing before the Board. Before the hearing, JISD informed Ross that Ross's secretary had resigned and refused to appear at the hearing.

On June 17, the Board held Ross's nonrenewal hearing. Ross and JISD called and cross-examined witnesses. Although JISD presented testimony from Ross's secretary, which was not in-person testimony, Ross did not raise a hearsay objection at the hearing. After the hearing, the Board

No. 20-50250

voted not to renew Ross's employment contract. On June 27, Ross appealed to the Texas Commissioner of Education. The Commissioner upheld the Board's decision.

Ross then filed suit against JISD in Texas state court, alleging sex, race, and age discrimination under the Texas Commission on Human Rights Act (TCHRA). Ross alleged that JISD's Assistant Superintendent, Elida Bera, who is a Hispanic woman, wanted to terminate Ross because Ross and African American students received preferential treatment from Superintendent Mackey, an African American male. Ross claimed that Bera planned to replace Ross as principal with either Lisa Guerrero, a Hispanic woman, or Loretta Davidson, a Caucasian woman, but that Bera was advised to proceed slowly as long as Ross had an active dispute with JISD. While Ross was on paid administrative leave, JISD appointed Debbie Grady, an African American woman who is two years older than Ross, as the interim principal of Metzger. After the Board decided not to renew Ross's contract, JISD appointed Tracey Valree, an African American woman who is six years younger than Ross, as principal of Metzger. Valree was principal for three years; Loretta Davidson became principal after Valree.

Ross amended her complaint to add two § 1983 claims, alleging that JISD retaliated against her for engaging in protected speech and deprived her of protected constitutional interests without due process. JISD then removed the case to federal court and moved for summary judgment.[2] The

---

[2] In its motion for summary judgment, JISD also moved, in the alternative, for a plea to the jurisdiction, solely for the TCHRA claims.

No. 20-50250

district court granted summary judgment in favor of JISD on all claims.[3] Ross timely appealed.

## II

We review summary judgment de novo.[4] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] We view all facts and draw all reasonable inferences in favor of the nonmovant.[6]

## III

Ross argues that the district court erred in granting summary judgment in favor of JISD. We address Ross's state-law discrimination claims and then her federal-law due process claim.

## A

Ross brought her race, sex, and age discrimination claims against JISD under the TCHRA, which prohibits employment discrimination based on "race, color, disability, religion, sex, national origin, or age."[7] The Supreme Court of Texas has instructed Texas courts to consult judicial interpretations of Title VII and follow the approach of the United States Supreme Court in interpreting Title VII when reviewing TCHRA claims.[8] That means a plaintiff can prove discriminatory intent with direct evidence

---

[3] The district court did not address JISD's alternative motion for a plea to the jurisdiction for the TCHRA claims.

[4] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[5] Fed. R. Civ. P. 56(a).

[6] *Dillard v. City of Austin*, 837 F.3d 557, 561 (5th Cir. 2016).

[7] Tex. Lab. Code § 21.051.

[8] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012).

No. 20-50250

of what the defendant did or said or with circumstantial evidence under the *McDonnell Douglas* burden-shifting framework.[9] Under *McDonnell Douglas*, a plaintiff has the initial burden of establishing a prima facie case of discrimination.[10] If she does so, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.[11] If the defendant can provide a reason, then the burden shifts back to the plaintiff to prove that the reason is pretextual.[12]

To establish a prima facie case of discrimination under the TCHRA, the plaintiff must establish that "she (1) was a member of the protected class . . . , (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone [outside the protected class] or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class."[13] Because the parties do not dispute the first three elements, we only address the last element of Ross's race, sex, and age discrimination claims.

1

We start with Ross's race discrimination claim. For the first time on appeal, Ross argues that she established her prima facie case through direct evidence. Because Ross did not present this argument to the district court, we cannot consider it.[14] Thus, to survive summary judgment, Ross has to rely

---

[9] *Id.* at 634.

[10] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[11] *Id.*

[12] *Id.* at 804.

[13] *Tex. Tech. Univ. Health Sci. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020).

[14] *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is

No. 20-50250

on circumstantial evidence under the *McDonnell Douglas* framework, as she did below. Only the fourth element of her prima facie claim is disputed, so Ross must show either that she was replaced by someone outside her protected class or treated less favorably than similarly situated individuals who were outside her protected class. Ross fails to show either.

First, Ross claims that she has shown that she was replaced by Loretta Davidson, who is Caucasian and thus outside Ross's racial protected class. But the undisputed facts refute this argument. Debbie Grady, the interim replacement while Ross was on paid administrative leave, is African American. And Tracy Valree, who became the principal after the Board voted not to renew Ross's employment contract, is also African American. Ross contends that we should not consider Grady or Valree because they were temporary replacements; instead, she says that we should consider only her permanent replacement, Loretta Davidson, who is Caucasian.[15] Ross provides no evidence that Valree was deemed a temporary replacement by JISD, that JISD told Valree she was a temporary replacement, or that any faculty at Metzger viewed Valree as a temporary replacement. Moreover, Valree served as principal for three years before Davidson became principal. Because all the evidence indicates that Valree was Ross's permanent replacement, the undisputed facts establish that Ross was not replaced by someone outside her protected racial class.

Second, Ross argues that she has shown that she was treated less favorably than similarly situated individuals who are outside of her protected

---

waived and cannot be considered or raised on appeal." (quoting *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002))).

[15] *See Herbert v. City of Forest Hill*, 189 S.W.3d 369, 376 (Tex. App.—Fort Worth 2006) (focusing on the race of the permanent replacement, rather than the race of the temporary replacements).

class. To succeed on this argument, Ross must proffer a comparator—a JISD employee whose contract was renewed "under nearly identical circumstances."[16] To satisfy this requirement, Ross must show that the proffered comparator and she: (1) "held the same job or responsibilities"; (2) "shared the same supervisor or had their employment status determined by the same person"; (3) "have essentially comparable violation histories"; and (4) have engaged in "nearly identical" conduct to the conduct that resulted in Ross's nonrenewal.[17] Ross proffered eleven individuals as comparators. Because five of those individuals had substantially different job responsibilities, they do not qualify as comparators.[18] Of the remaining six, who were either principals or vice principals at JISD schools, their conduct included covering up a teacher's inappropriate contact with a student, requiring teachers to change students' grades, "fail[ing] in leadership," and violating unspecified JISD policies and practices. Their conduct was not "nearly identical" to Ross's conduct, which involved financial mismanagement, inappropriate fundraising, inappropriate alcohol use, and misuse of funds and work time. Thus, Ross has failed to provide an adequate comparator. The undisputed facts show that Ross was not treated differently than similarly situated individuals outside her protected racial class.

2

We next address Ross's sex discrimination claim. Because Ross was replaced by three women (Grady, Valree, and Davidson), the undisputed facts establish that Ross was not replaced by someone outside her protected

---

[16] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (internal quotation marks and citation omitted).

[17] *Id.*

[18] *See Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012).

class. And Ross fails to raise a dispute of fact to show that she was treated less favorably than other similarly situated individuals because none of the four men whom Ross proffers qualifies as a comparator for the same reasons as above.

3

Finally, we address Ross's age discrimination claim. When the Board decided not to renew Ross's contract, Ross was fifty-five and thus protected under the TCHRA, which applies to employees who are forty or older.[19] To establish the last, and only disputed, element of her prima facie case for age discrimination, Ross must show either that she was "replaced by someone significantly younger" or "treated less favorably than others who were similarly situated but outside the protected class."[20] Ross has not shown that she was treated less favorably because she has failed to proffer any comparators for this claim. The eleven individuals whom she proposes as comparators were for her race and gender discrimination claims, not her age discrimination claim. And Ross does not provide any information about these individuals' ages.

Whether Ross has shown that she was replaced by someone significantly younger is a closer call. Grady, Ross's interim replacement, and Valree, Ross's permanent replacement, were also over forty and thus members of the protected class: Grady was fifty-seven (two years older than Ross), and Valree was forty-nine (six years younger than Ross). Even though Grady and Ross were within the protected age class, Ross can still establish her prima facie case if Valree is "significantly younger" than her.[21] While

---

[19] *See* Tex. Lab. Code § 21.101.

[20] *Flores*, 612 S.W.3d at 305.

[21] *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

No. 20-50250

most circuits have generally agreed that age ranges above ten years are significant (and those below are not), our circuit has not established such a bright-line rule.[22] We have implied that it is "a close question" whether an age difference of five years is significant.[23]

But we need not determine whether the six-year difference between Ross's and Valree's ages is significant for purposes of establishing a prima facie case because Ross has failed to satisfy the rest of the *McDonnell Douglas* framework. Assuming that Ross did establish a prima facie case of age discrimination, the burden shifted to JISD to rebut the presumption of discrimination by providing a "legitimate, nondiscriminatory reason" for its nonrenewal of Ross's contract.[24] JISD did that when it detailed Ross's numerous policy violations and performance issues in its Notice of Proposed Nonrenewal. Ross argues that JISD provided a "nonspecific laundry [list]" of allegations, which should not be sufficient to rebut the presumption of discrimination. But JISD's list is very specific, including, among other reasons, Ross's "engag[ing] in impermissible fund raising activities by charging students for composition books paid for by the district and for attending events such as pep rallies and performances," Ross's "work[ing] on an outside film project during her work hours and [] not [being] truthful

---

[22] *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336–39 (6th Cir. 2003) (collecting cases).

[23] *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004).

[24] *McDonnell Douglas*, 411 U.S. at 802.

No. 20-50250

to district officials about this." Plus, the only issue that we must consider with respect to JISD's reasons is whether they are legitimate, and they are.[25]

Because JISD provided legitimate reasons for the nonrenewal of Ross's contract, the burden shifted back to Ross to present at least some evidence that JISD's stated reasons for terminating her employment were pretextual.[26] Ross fails to do so. Ross's brief focuses exclusively on whether the reasons provided JISD were a pretext for racial discrimination. But she does not provide a single piece of evidence to indicate that JISD's reasons were a pretext for age discrimination. Thus, Ross fails to raise a dispute of material fact to show that JISD's reasons for not renewing her contract were a pretext for age discrimination.[27]

B

Ross argues that the district court erred in granting summary judgment on her due process claim because JISD terminated her without a

---

[25] Ross also tries to relitigate JISD's reasons for not renewing her term contract because she did not have a full and fair opportunity to litigate the issue of whether she was fired for being a "black, older woman." The record refutes this argument: Ross had an opportunity at her hearing to present evidence. Moreover, Ross is collaterally estopped from relitigating JISD's reasons for her nonrenewal. *See Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013) (listing the four conditions for collateral estoppel to apply); *see also Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 243 (Tex. App.—El Paso, 2012, no pet.) (providing that collateral estoppel applies when an administrative agency acts "in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate" (quoting *Bryant v. L.H. Moore Canning Co.*, 509 S.W.2d 432, 434 (Tex. App.—Corpus Christi, 1974))).

[26] *McDonnell Douglas*, 411 U.S. at 804.

[27] *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783 (Tex. 2018).

No. 20-50250

fair investigation, evidence, and notice of the charges against her and without abiding by the statutory requirements for the termination of a teacher.

To establish a procedural due process claim under § 1983, Ross must identify a protected property or liberty interest and then show that JISD's actions resulted in a deprivation of that interest.[28] Ross asserts that she has both a protected property interest and a protected liberty interest, so we address each in turn.

We look to Texas law to determine whether Ross had a protected property interest.[29] Under Texas law, Ross has no protected property interest in the renewal of her term employment contract, and Ross does not dispute this.[30] Ross instead argues that she has "the right to not be denied public employment except in a fundamentally fair manner" and that "the Board failed to consider her most recent evaluation, which was excellent." But a unilateral expectation of continued employment is not enough to create a constitutionally protected property interest.[31]

Ross also argues that JISD infringed upon her protected liberty interest by bringing stigmatizing charges against her. To prevail on her claim, Ross must show: "(1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that she

---

[28] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

[29] *See Nunez v. Simms*, 341 F.3d 385, 387–88 (5th Cir. 2003).

[30] Tex. Educ. Code § 21.204(e) ("A teacher does not have a property interest in a contract beyond its term.").

[31] *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (requiring a "legitimate claim of entitlement" to establish a protected property interest).

requested a hearing to clear her name; and (7) that [JISD] refused her request for a hearing."[32] Ross fails to establish all these elements. For example, the undisputed evidence shows that Ross was provided notice and an opportunity to be heard prior to her discharge. The Board sent Ross a Notice of Proposed Nonrenewal before it voted not to renew her contract, and that notice provided Ross with a summary of the charges against her and her right to request a hearing prior to being discharged. And Ross points to no evidence in the record to contradict that JISD provided sufficient notice. She has therefore failed to establish that she has a protected liberty interest.

IV

Ross failed to establish a prima facie case for race and sex discrimination. She also failed to generate a dispute of material fact to show that JISD's legitimate reasons for not renewing her contract were a pretext for age discrimination. And the undisputed evidence demonstrates that Ross does not have a protected property interest and that JISD did not deprive her of a protected liberty interest. For these reasons, we AFFIRM summary judgment in favor of JISD on Ross's race, sex, and age discrimination claims under the TCHRA and her procedural due process claim under § 1983.

---

[32] *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000).