# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00420-CV

**Andrew Matej, Appellant**

**v.**

**Texas Parks & Wildlife Department, Appellee**

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-000814, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Andrew Matej appeals the district court's order granting a combined plea to the jurisdiction and motion for summary judgment (the motion to dismiss) in favor of his former employer, appellee Texas Parks and Wildlife Department (TPWD). The order dismissed Matej's suit against TPWD alleging employment discrimination based on race and sex/gender. *See* Tex. Lab. Code § 21.051(a). Matej contends that the district court erred by granting the motion to dismiss because he demonstrated a prima facie case for his discrimination claims under the Texas Commission on Human Rights Act (TCHRA),[1] *see id.* § 21.254, and thus, showed a waiver of TPWD's sovereign immunity. We will affirm the district court's order.

---

[1] Although courts often refer to Chapter 21 of the Labor Code as the Texas Commission on Human Rights Act (TCHRA), "the Commission on Human Rights has been replaced with the Texas Workforce Commission civil rights division." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010). The terms "TCHRA," "Chapter 21," and "the Act" are used interchangeably in opinions applying the Act. *See id.*; *Harper v. PJC Air Conditioning & Plumbing, LLC*, No. 03-19-00548-CV, 2021 WL 2125009, at *1, n.1 (Tex. App.—Austin

# BACKGROUND[2]

Matej was hired in February 2015 as a Park Ranger/Park Police Officer at Stephen F. Austin State Park (SFASP). Park superintendent Martha Garcia (now Martha Martinez) supervised Matej. On the night of June 27, 2015, near the end of his shift but while still on duty, Matej and his fiancée Baily Hunicutt were alone in a locked, air-conditioned office within his assigned area of the maintenance shop when he changed from his TPWD uniform into civilian clothes for a concert. Matej recalls that mini blinds on the office window were closed.

That same Saturday night at around 9:45 p.m., Martinez and her then-husband, Rolando Garcia, wanted to retrieve a tool from the SFASP maintenance building. Martinez lived in SFASP housing as a requirement of her job, and Garcia was assisting with the repair of an antenna on the roof. Before walking from the residence to the maintenance building, Martinez tried to radio Matej because she wanted a staff witness to her retrieval of the tool. Matej did not respond. As Martinez and Garcia approached the maintenance building, they noticed a light in the window of the adjoining office. Gaps in the window blinds allowed a view into the office, especially when it was dark outside and illuminated inside. Through the window, Martinez and Garcia saw a shirtless male (Matej) facing a female (Hunicutt) seated in a chair. Martinez felt embarrassed and immediately turned away. Garcia, who is over a foot taller than Martinez, later indicated that he had seen Hunnicutt performing oral sex on Matej.[3]

---

May 26, 2021, pet. denied) (mem. op.). We refer to the TCHRA, as the parties do in their briefing.

[2] The facts are taken from the evidence that the parties submitted while litigating the combined plea to the jurisdiction and motion for summary judgment.

[3] Matej says sometime later, Garcia "admitted that he had not actually seen anything."

Martinez entered the maintenance building, banged her hand on the wall of the office, and then walked to the tool bin. Matej alleges that he was startled by the knock at the office door while he was changing clothes and quickly pulled up his uniform pants. He also alleges that Hunicutt, who was printing concert tickets from an email on the computer, exited the office, and closed the door behind her. Some minutes later, Matej followed, wearing his uniform pants, a civilian shirt, and socks. Matej and Hunicutt told Martinez that they were changing clothes before attending a concert.

On Monday, June 29, when Matej went back on duty, he joked to three coworkers that the superintendent "caught me with my pants down," referencing that "she knocked on the door while [he] was in the process of changing pants." Matej described this as an embarrassing incident that everyone in the conversation laughed about. A coworker told him, "Bet you'll never change in the office again."

**Incident report and investigation**

Martinez reported the incident involving Matej and Hunicutt on July 3, 2015, and TPWD's Human Resources (HR) Division initiated an investigation of potential policy violations. The investigation included witness statements from Martinez, Garcia, Matej, and Matej's coworkers. One of the coworkers stated that although Matej said his fiancée was in the bathroom when the superintendent caught him with his pants down, during a conversation with someone a couple of days later, Matej indicated that he was caught when his fiancée was performing a sexual act on him. Another coworker who had lunch with Matej a few days after the incident interrupted him when he tried multiple times to discuss what happened. Matej was

3

nodding and grinning, and his coworker perceived that Matej was going to say something sexual was occurring when he was caught with his pants down.

Matej denies engaging "in any sort of sexual manner or behavior." He disputed Martinez's report, asked HR investigators whether they had any video or photographic proof, and initially refused to sign the summary of his interview, but he denies being uncooperative during the investigation. He accused the witnesses of lying and making up this story to harm him.

Meanwhile, on July 22, 2015, Matej filed an employee-relations complaint against Martinez, alleging that on unspecified dates she asked him to (1) shave his beard per park police officer (PPO) grooming guidelines, although he had not yet started his PPO training; (2) refrain from wearing an unprofessional tuna-fish necklace while on duty, although "[o]ther employees wear similar necklaces"; and (3) refrain from hunting or fishing talk while on duty to avoid offending anyone. Matej complained that "from his point of view, he feels he is being singled out"; "feels [Martinez] is just trying to get him fired"; and "feels that maybe she has a problem with the men at work but that is just speculation." Matej also complained that Martinez had "verbally degrade[d] some of the other male employees when they [we]re not present."

On July 31, 2015, HR investigators issued a memo on their completed investigation into the allegation that Matej had engaged in a sexual act in the maintenance office while on duty and concluded that the allegation was substantiated. The memo recommended corrective action. On August 27, 2015, the Director of Region 4 State Parks issued a memo to the Director of the State Parks Division, recommending Matej's termination because the HR investigation substantiated the alleged misconduct and because Matej did not provide truthful

4

answers when interviewed about the incident. TPWD terminated Matej's employment effective September 4, 2015.

**Matej sues TPWD for race and sex/gender discrimination**

Matej sued TPWD in 2017, alleging that it terminated his employment because of his race (white) and his sex (male). Matej's pleadings disputed that he (1) committed a sexual act on duty, (2) provided false information, and (3) failed or refused to cooperate with TPWD's ensuing investigation. Five years later, in 2022, Matej filed a motion for summary judgment contending that he had demonstrated a prima facie case of gender and race discrimination and that TPWD's reasons for terminating his employment were pretextual. TPWD disagreed and filed its motion to dismiss contending that sovereign immunity barred Matej's discrimination claims. In his response to TPWD's motion to dismiss, Matej incorporated by reference the facts from his motion for summary judgment.

After hearing the parties' arguments, the district court granted TPWD's motion and dismissed Matej's claims. Matej appeals the district court's order.

## DISCUSSION

Matej contends that the district court erred by granting the motion to dismiss because he provided evidence supporting a prima facie case for his race and sex/gender discrimination claims, thereby waiving TPWD's sovereign immunity.

**Standard of review and applicable law**

"Whether a court has subject matter jurisdiction is a question of law." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Thus, we review de novo the district court's ruling on the motion to dismiss that raised the issue of TPWD's

5

sovereign immunity. *See Texas Pol. Subdivisions Joint Self-Ins. Fund v. Texas Dep't of Ins.-Div. of Workers' Comp.*, 681 S.W.3d 491, 494-95 (Tex. App.—Austin 2023, pet. denied) (reviewing de novo trial court's ruling on combined plea to jurisdiction and summary-judgment motion that raised issue of TPS Fund's governmental immunity).

The TCHRA waives immunity, but only if the plaintiff states a claim for conduct that actually violates the statute. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Because a statutory violation is necessary to establish a waiver of immunity, the jurisdictional and merits inquiries for the statutory claim are intertwined. *Id.* at 783. To prevail on a claim of immunity, a governmental defendant may challenge whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case, the existence of those very jurisdictional facts, or both. *City of San Antonio v. Riojas*, 640 S.W.3d 534, 536 n.8 (Tex. 2022).

When, as here, a governmental defendant challenges the existence of jurisdictional facts, the court must move beyond the pleadings and consider evidence. *See id*. The analysis in these cases mirrors that of a traditional summary judgment: "[I]f the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Alamo Heights*, 544 S.W.3d at 771. "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id.* "In doing so, however, we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not." *Id.*

Because an express purpose of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964," the Texas Supreme Court has "consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012); *see* 42 U.S.C.S. § 2000e-2(a) (prohibiting employment discrimination against individual because of that individual's race, color, religion, sex, or national origin); Tex. Lab. Code § 21.001(1).

**Prima facie case of discrimination under TCHRA**

Violation of the TCHRA can be established with direct evidence of what the defendant did and said, *Garcia*, 372 S.W.3d at 634, or with circumstantial evidence under the three-part *McDonnell Douglas* burden-shifting framework, *Alamo Heights*, 544 S.W.3d at 782; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973) (addressing allocation of burdens and order of presentation of proof in Title VII case alleging discriminatory treatment). Under *McDonnell Douglas*, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (citing *McDonnell Douglas*, 411 U.S. at 802). If the plaintiff does so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant can provide such a reason, the burden shifts back to the plaintiff to establish that the proffered reason is pretextual. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). We address only the first step of the *McDonnell Douglas* framework because we conclude that Matej failed to present evidence creating a fact issue on his prima facie case of discrimination. *See* Tex. R. App. P. 47.1.

Subsection 21.051(a)(1) of the TCHRA prohibits employment discrimination based on an individual's membership in a protected class, including race and sex/gender:

> [a]n employer commits an unlawful employment practice if because of race, . . . [or] sex . . . the employer: (1) . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.

Tex. Lab. Code § 21.051(a)(1). To establish a prima facie case of discrimination under the TCHRA, a plaintiff must show that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated employees outside the protected group. *Ross*, 993 F.3d at 321. Only the last element, common to both of Matej's discrimination claims, is at issue here.

**Prima facie case of discrimination requires comparator**

To make a prima facie case of discrimination, Matej must show that he was treated less favorably than similarly situated individuals who were outside his protected class. *See id.*; *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). This requires him to proffer a comparator—a TPWD employee whose employment was not terminated "under nearly identical circumstances." *See Ross*, 993 F.3d at 321 (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). Specifically, Matej must show that he and his comparator (1) "held the same job or responsibilities"; (2) "shared the same supervisor or had their employment status determined by the same person"; (3) "have essentially comparable violation histories"; and (4) have engaged in "nearly identical" conduct to the conduct that resulted in the termination of Matej's employment. *See id.* (quoting *Lee*, 574 F.3d at 260).

8

### 1. Race discrimination

We first address Matej's race-discrimination claim. Matej contends in his motion for summary judgment, his response to TPWD's motion to dismiss, and his appellant's brief that TPWD "reprimanded [him] for wearing a tuna necklace, while at least one other non-white Hispanic employee was permitted to wear a very similar necklace while facing no consequences." As support for that contention, Matej points to the unsworn employee-relations complaint[4] that he filed while under investigation for the alleged on-duty sex act. The complaint recites that Martinez "instructed [Matej] that the tuna necklace he wears was not professional and he should not wear it. Mr. Randy Fields was present during that conversation. Other employees wear similar necklaces and so from his point of view he feels he is being singled out."

This does not establish a prima facie case of race discrimination. Matej's employee-relations complaint refers vaguely to "other employees," without stating whether they held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, had essentially comparable violation histories, or engaged in "nearly identical" conduct to the conduct that resulted in the termination of Matej's employment. *Cf. Ross*, 993 F.3d at 321. Moreover, Matej's complaint does not state that the "other employees" were non-white.[5] Thus, the unspecified "other employees" mentioned in Matej's employee-relations complaint are not comparators for his race-discrimination claim.

---

[4] TPWD objected to Matej's unsworn and unauthenticated employee-relations complaint based on hearsay and lack of personal knowledge, but the record does not reflect a ruling on the objections. *See Mitchell v. Baylor Univ. Med. Ctr.*, 109 S.W.3d 838, 842 (Tex. App.—Dallas 2003, no pet.) ("Evidence that has been objected to remains part of the summary judgment proof unless an order sustaining the objection is reduced to writing, signed, and entered of record.").

[5] Additionally, as Matej acknowledges, he was "reprimanded," not terminated, because he wore a tuna necklace.

### 2. Sex/gender discrimination

Similarly, Matej failed to offer an adequate comparator for his sex/gender discrimination claim. He contends in his motion for summary judgment and his appellant's brief that TPWD "targeted him for his facial hair, threatening to fire him if he did not shave because PPOs were not allowed to have beards," but he was not a PPO, and "similarly situated park rangers outside of his protected class (female rangers) were not targeted for failing to adhere to grooming standards for PPOs."[6] Matej further contends in his motion for summary judgment, his response to TPWD's motion to dismiss, and his appellant's brief that Martinez "verbally denigrate[d] him[] and other male employees, while not doing the same to female employees."

As support for his claim of sex/gender discrimination, Matej again relies only on his employee-relations complaint:

- The major offense that he is most upset about is that he was threatened to get rid of his beard. He told them that he was attending his friend's wedding and he would like to keep the beard. Ms. [Martinez] told him ok but the beard had to go after the wedding. After the wedding he shaved his beard down to a goatee.

- Mr. Fields complimented him on his new look. During a conversation where Mr. Fields was present Ms. [Martinez] told Andrew "if you don't shave don't come to work tomorrow." He was also told that he was being insubordinate and not following PPO grooming guidelines even though he is not yet a PPO. He said he was in fear of his job so he did shave.

- Prior to this incident at his physical fitness test it was recommended to him by Lt. Huggins that he gradually trim his beard so that he did not have to shave it all off at once when he went to the Game Warden academy for PPO training.

- Mr. Matej feels Ms. [Martinez] is just trying to get him fired. He feels that maybe she has a problem with the men at work but that is just speculation. He has

---

[6] Matej also includes a paraphrased version of this argument in his response to TPWD's motion to dismiss: "Martinez threatened to fire Matej for having a beard because Park Police Officers (PPO) were not allowed to have beards. Plaintiff was not a PPO, however, and was therefore not required to shave."

witnessed Ms. [Martinez] verbally degrade some of the other male employees when they are not present and to other employees.

This does not establish a prima facie case of sex/gender discrimination. Matej provided no evidence that similarly situated female employees were treated any differently than he was. The complaint makes no reference to any female employees, much less whether they held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, had essentially comparable violation histories, or engaged in "nearly identical" conduct to the conduct that resulted in the termination[7] of Matej's employment. *Cf. Ross*, 993 F.3d at 321. Rather, the complaint admits that Matej's feeling that Martinez might have a problem with men at work "is just speculation." Thus, Matej provided no comparator for his sex/gender discrimination claim.

### 3. Unspecified discrimination complaint

Matej's remaining complaint—presented in his motion for summary judgment and his appellant's brief—is that he "was reprimanded for talking about hunting and fishing, even though other similarly situated park rangers outside of [his] protected classes were allowed to speak about these topics."[8] Matej's employee-relations complaint, which does not refer to park rangers, recites that Martinez "verbally instructed him to not talk about hunting or fishing while on duty," and "[s]he said that she didn't want him to offend anyone." No race, sex/gender, or other protected class or group are referenced in this allegation, nor is there any argument or

---

[7] Matej's employment was not terminated because of his beard.

[8] Matej also includes a paraphrased version of this argument in his response to TPWD's motion to dismiss: "Plaintiff was also reprimanded for talking about hunting and fishing while his similarly situated coworkers outside his protected class were allowed to speak about these topics."

evidence showing how others were "similarly situated." Matej's conclusory statement does not support a prima facie case of discrimination. *See Carter v. Hegar*, No. 03-16-00706-CV, 2018 WL 2375815, at *3 (Tex. App.—Austin May 25, 2018, no pet.) (mem. op.) (concluding that plaintiff "cannot establish a prima facie case of employment discrimination based upon 'conclusory allegations . . . or subjective beliefs and feelings'" (quoting *Michael v. City of Dallas*, 314 S.W.3d 687, 692 (Tex. App.—Dallas 2010, no pet.))).

Matej acknowledges the fact that his coworkers were not similarly accused of engaging in a sexual act on TPWD property, and that courts "require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under nearly identical circumstances." *See Lee*, 574 F.3d at 260. He emphasizes that "nearly identical" does not mean actually "identical" because "it would only be in the rarest of circumstances that the situations of two employees would be totally identical." *See id.* But even if a comparator's conduct is not totally identical to the plaintiff employee's, "the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out." *Id.* at 261; *see Ross*, 993 F.3d at 323 (concluding that conduct of school principals or vice principals—who had covered up teacher's inappropriate contact with student, required teachers to change students' grades, failed in leadership, and violated unspecified school-district policies and practices—was not "nearly identical" to plaintiff school principal's conduct, which involved financial mismanagement, inappropriate fundraising, inappropriate alcohol use, and misuse of funds and work time). Here, Matej has not identified any female or non-white coworker who was treated more favorably than he was after allegedly engaging in conduct of "comparable seriousness" to engaging in a sex act on TPWD property while on duty.

12

Next, Matej argues that the issue of similarity between him and his proffered comparators should not be the basis for dismissal because "whether two employees are 'similarly situated' generally presents a question of fact for the jury." *See Wallace v. Seton Fam. of Hosps.*, 777 F. App'x 83, 89 (5th Cir. 2019). While "[i]t may be true that the inquiry is often reserved for the fact-finder[,] that is only the case when the plaintiff has produced sufficient evidence that would permit a reasonable fact-finder to conclude that the plaintiff and other employees are similarly situated." *Morris v. Town of Indep.*, 827 F.3d 396, 402 (5th Cir. 2016) (noting that "[w]hen the plaintiff does not do so, summary judgment is appropriate"). Here, Matej has not produced any evidence from which a reasonable fact finder could conclude that he and a comparator are similarly situated; thus, no question of fact is presented for a jury. *See id.*; *Limas v. City of Dallas*, No. 05-19-01223-CV, 2021 WL 3197334, at \*13 (Tex. App.—Dallas July 28, 2021, no pet.) (mem. op.) (concluding that plaintiff failed to offer evidence from which jury could reasonably conclude that plaintiff and comparator engaged in conduct of "comparable seriousness" for which plaintiff was treated less favorably than comparator).

We conclude that that the jurisdictional evidence, taken as true and viewed in the light most favorable to Matej, fails to affirmatively demonstrate a prima facie case of race and sex/gender discrimination under the TCHRA.[9] As a result, Matej failed to meet his burden to demonstrate that his claim falls within the scope of TCHRA's waiver of immunity. Because the

---

[9] Because Matej failed to establish a prima facie case of race or sex/gender discrimination, we need not reach the parties' remaining arguments as to any legitimate, nondiscriminatory reasons for terminating Matej's employment and pretext. *See* Tex. R. App. P. 47.1; *Morris v. Town of Indep.*, 827 F.3d 396, 403 (5th Cir. 2016); *Texas Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 312 (Tex. 2020).

district court did not err by granting TPWD's jurisdictional challenge, we overrule Matej's three appellate issues.

## CONCLUSION

We affirm the district court's order granting TPWD's plea to the jurisdiction and motion for summary judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed:   August 30, 2024