# United States Court of Appeals
# for the Fifth Circuit

No. 24-50185

United States Court of Appeals
Fifth Circuit

**FILED**
November 8, 2024

Lyle W. Cayce
Clerk

Taiwo Ayorinde,

*Plaintiff—Appellant*,

*versus*

Team Industrial Services Incorporated,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:23-CV-12

_____

Before Elrod, *Chief Judge*, and Dennis and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Appellant Taiwo Ayorinde sued his former employer, Appellee Team Industrial Services Incorporated ("Team"), asserting numerous employment discrimination claims. The parties cross-moved for summary judgment. The district court granted Team's motion, denied Ayorinde's motion, and entered judgment for Team on all counts. Ayorinde now appeals. Because summary judgment for Team is warranted on all counts, we AFFIRM.

No. 24-50185

I

Team initially employed Ayorinde from 2016 to 2018, at which time Team terminated Ayorinde. Although Team had designated Ayorinde as ineligible for rehire due to "job abandonment," Kevin Jarrett, a Team District Manager, received approval to rehire Ayorinde in April 2022 as a Level II Technician at an hourly rate of $32.

According to Team's records, Ayorinde's supervisor Israel Ortega expressed concerns about the quality of Ayorinde's welds, his failure of a necessary practical exam, his compliance with safety protocols, and his professionalism. Ortega reportedly spoke with Ayorinde about his concerns and told Ayorinde that he would be demoted to an assistant role for a one-month training period, during which time his pay would be cut from $32 per hour to $24 per hour.

In early August 2022, Ayorinde took approved bereavement leave to travel to Africa for his father's funeral. Ayorinde asserts that he was unaware of the pay cut and only discovered that his pay rate had been reduced while he was on leave. Ayorinde raised the issue of his decreased pay with Jarrett, who later learned that Ortega had not received the required approval from Team's human resources department to cut Ayorinde's pay. Consequently, Team reinstated Ayorinde's original pay rate and, on August 19, 2022, paid Ayorinde what he was owed from prior pay periods.

Nonetheless, Ayorinde resigned from Team shortly thereafter. In a resignation letter dated August 20, 2022, Ayorinde asserted that he was leaving Team due to a hostile work environment and discrimination, as evidenced by the pay cut, a supervisor's delay in readministering his practical exam, and Ortega's failure to schedule Ayorinde for any work after his return from Africa. One month later, Ayorinde filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission and the

No. 24-50185

Civil Rights Division of the Texas Workforce Commission, and then filed an Amended Charge of Discrimination two weeks thereafter. In his amended charge, Ayorinde alleged age, national origin, and race discrimination.

In late November 2022, the EEOC issued a Determination and Notice of Rights with respect to Ayorinde's charge, allowing Ayorinde to file suit within 90 days. Ayorinde timely filed a complaint against Team in federal district court, asserting five causes of action: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) race discrimination in violation of the Equal Pay Act of 1963; (3) race discrimination in violation of the Lilly Ledbetter Fair Pay Act of 2009; (4) age discrimination in violation of the Age Discrimination in Employment Act of 1967; and (5) race discrimination and retaliation in violation of 42 U.S.C. § 1981. Ayorinde later filed an amended complaint consisting of six additional paragraphs of alleged facts.

In December 2023, Ayorinde moved for partial summary judgment as to liability, and Team cross-moved for summary judgment on all claims shortly thereafter. The district court granted Team's motion, denied Ayorinde's motion, and entered judgment for Team on all claims. Ayorinde timely appealed.

II

We review grants of summary judgment de novo. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although we "view all facts and draw all reasonable inferences in favor of the nonmovant," *Ross*, 993 F.3d at 321, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence," *Turner v. Baylor Richardson Med.*

3

*Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotation marks and citation omitted). "Moreover, we may affirm a summary judgment on any ground supported by the record." *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 419 (5th Cir. 2024) (cleaned up).

## III

Ayorinde's arguments on appeal challenge only the district court's grant of summary judgment to Team.[1]  We address each of Ayorinde's arguments in turn.

## A

Ayorinde first challenges summary judgment as to his Equal Pay Act claim.  "To establish a prima facie case under the Equal Pay Act, [a plaintiff] must show that '(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison.'" *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (quoting *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)).  Here, the district court found that Ayorinde's Equal Pay Act claim fails as a matter of law because he has not alleged sex discrimination.

On appeal, Ayorinde argues only that he was not required to file an EEOC charge before filing an Equal Pay Act claim in federal court and that the California Equal Pay Act prohibits pay discrimination on the basis of race, as well as sex.  These arguments are not responsive to the fundamental issue

---

[1] Ayorinde has not asked this court to enter summary judgment for him on liability, as he did in his motion for summary judgment before the district court.  Rather, Ayorinde asks this court to reverse the district court's ruling that Team is entitled to judgment as a matter of law on all counts.

identified by the district court and Team—that the federal Equal Pay Act does not provide a cause of action for race discrimination, and Ayorinde has not alleged that he was paid less than any female employee, as required to sustain an Equal Pay Act claim. *See id.* at 617; *see also, e.g.*, *Edwards v. Smitty's Supply, Inc.*, No. 2:15-CV-3223, 2016 WL 3667361, at *8 (E.D. La. July 11, 2016) ("As a matter of law, the Equal Pay Act does not apply to claims of race discrimination."). Because Ayorinde's failure to allege sex discrimination is fatal to his Equal Pay Act claim, the district court's grant of summary judgment to Team was appropriate.

B

Ayorinde also challenges the district court's disposition of his claims under Title VII and § 1981. "Because claims brought pursuant to Title VII and § 1981 are governed by the same evidentiary framework, such that the analyses under both statutes are substantively the same, we analyze [Ayorinde's] Title VII and § 1981 claims together." *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (per curiam) (internal quotation marks and citation omitted). We address his race discrimination, retaliation, constructive discharge, and hostile work environment arguments in turn.

1

A plaintiff "may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). Where, as here, the plaintiff offers no direct evidence of intentional race discrimination,[2] we

---

[2] Ayorinde has not challenged the district court's conclusion that he lacks direct evidence of race discrimination, arguing only that district court erred in concluding that he has failed to establish a prima facie case under the *McDonnell Douglas* framework. Regardless, we agree with the district court that Ayorinde has not identified any direct

analyze the claim under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCoy*, 492 F.3d at 556; *see also Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272-73 (5th Cir. 2006). "Under *McDonnell Douglas*, a plaintiff has the initial burden of establishing a prima facie case of discrimination. If [he] does so, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. If the defendant can provide a reason, then the burden shifts back to the plaintiff to prove that the reason is pretextual." *Ross*, 993 F.3d at 321 (internal quotation marks and citations omitted).

To make out a prima facie case of race discrimination at the first step of *McDonnell Douglas*, a plaintiff must demonstrate that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556 (citation omitted); *see also Hamilton*, 79 F.4th at 506 (defining "adverse employment action" for Title VII purposes). Here, the district court concluded that Ayorinde has failed to establish a prima facie case for his race discrimination claim because he has provided "no evidence identifying someone, or anyone, similarly situated who was treated more favorably because of race."

On appeal, Ayorinde asserts in a conclusory fashion that the fourth element is met because "the adverse action occurred under circumstances giving rise to an inference of discrimination." But Ayorinde identifies no evidence to support the conclusion that he was treated less favorably than any

---

evidence of race discrimination. *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015), *as revised* (Feb. 3, 2015) (describing this court's analysis for determining what constitutes direct evidence of race discrimination).

similarly situated, non-Black employee, and this court has not identified any such evidence in its own review of the summary judgment record. Because Ayorinde has not met his burden of establishing a prima facie case of race discrimination, the district court's grant of summary judgment to Team was warranted.

2

"The antiretaliation provision of Title VII prohibits an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 576-77 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (cleaned up) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (in turn quoting 42 U.S.C. § 2000e-3(a))). "Where, as here, a retaliation case is based on circumstantial evidence, we apply the *McDonnell Douglas* framework." *Id.* at 577 (citation omitted). "Under this framework, the plaintiff has the burden to prove a prima facie case of retaliation by showing (1) [he] engaged in a protected activity; (2) [he] suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* (internal quotation marks and citation omitted). The district court here concluded that no evidence in the summary judgment record supported Ayorinde's retaliation claim other than Ayorinde's own conclusory statements.

In his briefing before this court, Ayorinde asserts that he "had an altercation" with his supervisor when Ayorinde "requested his test be uploaded and his record updated" and that "the [s]upervisor never liked how the interaction went" and consequently "retaliated by not updating [Ayorinde's] records on [Team's] website" and by cutting Ayorinde's

hourly pay rate. But he again fails to identify any evidence suggesting that he participated in a protected activity or that his supervisor consequently retaliated against him. Ayorinde cites the five exhibits to his motion for summary judgment, along with allegations from his original complaint and an exhibit that was appended to his amended complaint (but not included in the summary judgment record). None of the cited evidence reveals any retaliatory adverse employment action based on protected activity, and Ayorinde "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner*, 476 F.3d at 343 (internal quotation marks and citation omitted). Because Ayorinde has not met his prima facie burden, the district court's grant of summary judgment to Team on the retaliation claim was appropriate.

3

Ayorinde also argues that the district court erred in granting summary judgment to Team on his constructive discharge claim. The district court concluded that summary judgment for Team was warranted because Ayorinde failed to exhaust his administrative remedies on this issue. Before seeking relief under Title VII in federal court, plaintiffs must timely "exhaust their administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018), *aff'd*, 587 U.S. 541 (2019). "To determine whether a Title VII claim has been exhausted, we construe the EEOC charge in its broadest reasonable sense and ask whether the claim can reasonably be expected to grow out of the charge of discrimination." *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018) (internal quotation marks and citation omitted). Although "the magic words 'constructive discharge'" need not appear in the EEOC charge, a plaintiff alleging constructive discharge must have "include[d] allegations 'like or related to' her constructive discharge claim." *Id.* (citation omitted).

No. 24-50185

Despite challenging the district court's conclusion, Ayorinde offers no discussion of his allegations before the EEOC, instead highlighting the allegations made in his letter of resignation. Ayorinde's letter of resignation has no bearing on whether he exhausted his administrative remedies. Neither Ayorinde's original EEOC charge nor his amended charge includes allegations "like or related to" his constructive discharge claim. Although Ayorinde asserted that he was discriminated against on the basis of his race and age because his supervisor failed to schedule him for jobs, he did not allege facts suggesting his "working conditions [became] so intolerable that a reasonable person in [Ayorinde's] position would have felt compelled to resign." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 480 (5th Cir. 2008) (first alteration in original) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). Indeed, Ayorinde made no reference at all to his resignation in either of his EEOC charges. We thus conclude that Ayorinde has failed to exhaust administrative remedies with respect to his constructive discharge claim and that summary judgment was proper.

4

Lastly, Ayorinde argues that he has established a prima facie hostile work environment claim based on "racial harassment." To establish a prima facie case for a race-based hostile work environment claim, a plaintiff must show: "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 433 (5th Cir. 2023) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "Harassment generally takes the form of 'discriminatory intimidation, ridicule, and insult' that rises to the level of 'hostile or abusive.'" *Clark v. City of Alexandria*, 116 F.4th 472, 479

9

(5th Cir. 2024) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The harassing behavior must be "sufficiently severe or pervasive" such that it "alters the conditions of the victim's employment and creates an abusive environment," and the "environment must be objectively and subjectively hostile to the victim of racial discrimination." *Arredondo*, 81 F.4th at 433 (cleaned up) (citing *Harris*, 510 U.S. at 21). When analyzing whether the behavior is sufficiently severe or pervasive, we "consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks and citation omitted).

Although Ayorinde asserts on appeal that he has made the requisite showing to sustain a race-based hostile work environment claim, it is not clear that this argument was squarely presented to the district court. The argument does not appear in Ayorinde's motion for summary judgment, and Ayorinde's brief in opposition to Team's motion for summary judgment did not respond to Team's argument that Ayorinde failed to administratively exhaust this issue. Further, although the phrase "hostile working environment" appears in the allegations supporting Ayorinde's Title VII and § 1981 counts, his complaint provides no factual allegations of "racial harassment" distinct from his race discrimination and retaliation claims.

Regardless, considering this issue de novo, we agree with Team that Ayorinde failed to administratively exhaust his race-based hostile work environment claim.[3] *See Davenport*, 891 F.3d at 167. Nowhere in either

---

[3] Team suggests that Ayorinde failed to administratively exhaust because his EEOC charges did not include the words "hostile work environment." But Ayorinde's word choice is not alone dispositive. "A plaintiff need not use the magic words 'hostile work environment' to raise this claim." *Portis v. First Nat. Bank of New Albany, Miss.*, 34

Ayorinde's original EEOC charge or his amended charge did he allege that he experienced any harassment while working at Team, whether based on his race or otherwise. He did not assert that he experienced any "discriminatory intimidation, ridicule, [or] insult," or that he was ever subjected "physically threatening or humiliating" behavior or even to an "offensive utterance." *Harris*, 510 U.S. at 21 (citation omitted). Instead, Ayorinde's EEOC charges asserted only that his supervisor discriminated against him because of his race and age by refusing to readminister a practical test that Ayorinde had previously failed, by failing to send Ayorinde's other assessment results to Team's corporate office, and by refusing to call Ayorinde for jobs. A hostile work environment claim could not "reasonably be expected to grow out of" these allegations. *Davenport*, 891 F.3d at 167. Summary judgment is therefore proper.

## C

Finally, although Ayorinde generally argues that the district court erred in granting summary judgment to Team on all claims, he has neglected to brief any specific challenge to the district court's analysis of his claims under the Lilly Ledbetter Fair Pay Act and the Age Discrimination in Employment Act. It is well established that an "appellant abandons all issues not raised and argued in its *initial* brief on appeal" and that a "party who inadequately briefs an issue is considered to have abandoned the claim." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

Ayorinde refers to the Lilly Ledbetter Fair Pay Act only twice in his briefing before this court, and in both instances, the Act is only mentioned in a list of Ayorinde's asserted causes of action. Similarly, Ayorinde refers to

---

F.3d 325, 332 n.14 (5th Cir. 1994), *as amended on denial of reh'g* (Nov. 10, 1994) (citation omitted).

No. 24-50185

the Age Discrimination in Employment Act only three times: twice in the same two lists of asserted causes of action and once in a single paragraph in the body of his reply brief.[4] Because Ayorinde failed to raise or adequately brief any challenge to the district court's grant of summary judgment to Team on these statutory claims, we deem any such challenge to be abandoned.

\* \* \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

_____

[4] Only the last reference provides any argument, but that argument is nonetheless conclusory. Ayorinde asserts that he is over 50 years old and that he had not been scheduled for any work hours for over a month prior to his resignation, while other of his younger coworkers had been scheduled for overtime hours. Ayorinde argues this is a "total violation of the ADEA" but does not elaborate further. Regardless, as noted above, an appellant is deemed to have abandoned any issue not raised in his initial brief on appeal. *Cinel*, 15 F.3d at 1345.